## HUGHES & ZEEK v. L. C. WILEY.

TITLE, *When Vested in Vendee.* A contract for the sale of standing millet, which provided that it should be cut and stacked on the farm of the vendor, and within thirty days be measured and paid for, does not vest the title to the millet in the vendee until it has been measured and paid for according to the contract.

*Error from Elk District Court.*

ACTION brought by John Hughes and C. B. Zeek, partners as *Hughes & Zeek*, against *L. C. Wiley*, to recover $970 as damages for an alleged breach of a contract for the sale of certain corn and millet by defendant to plaintiffs. The record shows, substantially, that about September 6, 1884, the parties entered into an agreement by the terms of which *Wiley* sold to *Hughes & Zeek* one hundred and seventy tons of millet, to be delivered in stack by defendant to plaintiffs on the farm of defendant—one hundred and forty-five tons thereof at $2.80 per ton, and twenty-five tons thereof at $3 per ton, the difference in price being caused by the length of haul to the farm of Hughes; that the millet was to be paid for within thirty days from the time it was stacked. It further appears that plaintiffs were feeding cattle for sale on the market, and that it was understood at the time of making the contract that the corn and millet were designed for that use. The millet was cut and stacked on the farm of defendant and that of his

mother, but the millet was not delivered, as plaintiffs claimed, by reason of the fault of *Wiley;* and all of the corn was not delivered for the same reason. Plaintiffs claimed that feed was scarce, and, as winter came on, greatly advanced in price, and that they were compelled to buy feed, and pay the highest prices therefor, and hence that they were greatly damaged by the neglect and refusal of the defendant to comply with his contract.

At the time the contract was made, Wiley signed the following written instrument:

"HOWARD, KAS., September 6th, '84.—Received of John Hughes one hundred dollars, to apply on millet and corn bought of me on my farm—millet to be No. 1, at $2.80 and $3 per ton, corn to be cut in shock, and no stock allowed in field where crop is, and fire-breaks broke sufficient to keep out all fires. This agreement includes all corn on my farm, about fifty acres, more or less; all the corn cut if possible, and not less than thirty-five acres cut; corn to be twenty cents per bushel. If not all cut, the balance to be delivered at John Hughes's farm, or where he may direct.    L. C. WILEY."

The defendant answered by a general denial; and also that on September 6, 1884, he was a minor. Defendant, further answering, said that—

"On or about the 24th of December, 1884, and after the defendant became of full age, he restored to the plaintiffs all money and property received from them, and entered into another contract, by which all previous contracts with the plaintiffs were disaffirmed and annulled, and by which said subsequent contract he sold to plaintiffs a large quantity of corn, to wit, one thousand one hundred and eighty-five bushels and twenty-three pounds, at and for the price of thirty cents per bushel, which amounted to the sum of two hundred thirty-seven dollars and six cents; that plaintiffs received the said corn, and paid him the sum of two hundred dollars as part payment thereon, and neglected and refused to pay the remainder, thirty-seven dollars and six cents, and still neglect and refuse to pay the same, although often requested so to do."

The defendant prayed judgment for $37.06. Plaintiffs replied by a general denial. Trial at the October Term, 1885. The defendant interposed a special demurrer to plaintiffs' ev-

idence as not sufficient to show their right to recover any damages so far as the millet was concerned. This demurrer the court sustained. It was admitted by the parties that there were 1,423 bushels of corn, concerning which they had bargained; that the plaintiffs had received 1,185 bushels thereof, and that $37 on the purchase-price of the corn received had not been paid by the plaintiffs. The jury found for the defendant, and assessed the amount of his recovery at $20. The plaintiffs moved for a new trial, which was denied. Thereupon the court rendered judgment for defendant for $20, and for costs of suit, amounting to $191.95. To reverse this judgment, the plaintiffs bring the case here.

*Nichols & Jackson,* for plaintiffs in error.

*J. M. White,* for defendant in error.

Opinion by SIMPSON, C.: A jury was impaneled to try this cause. After the plaintiffs in error had stated their case, the defendant in error interposed a special demurrer to that part of the evidence in reference to the millet, and the court sustained it. This is the principal error alleged and discussed in the brief of counsel for plaintiffs in error.

As we gather the facts regarding the millet from the contract of September 6, 1884, they are as follows: Wiley was to cut and stack the millet, and notify Hughes when the same was completed. Thirty days thereafter it was to be measured, and the plaintiffs in error were to pay for it. The millet was cut, and the stacking practically completed on the 28th day of September. On the 10th day of October, Hughes told C. W. Fleak, the brother-in-law and agent of Wiley, who had been authorized by Wiley to attend to the measurement of the millet, that the probabilities were that the millet was damaged to some extent; that the fire-breaks were not broken, and that he had better write to Wiley (who was at Manhattan) to come down in case he (Fleak) could not allow any damages on the millet; that he did not want, or would not take, damaged millet. Hughes and Wiley had a conversation on the 19th

day of October about the millet; Wiley said that Martindale
wanted it, and would consider it a great favor if Hughes
would let him have it. Hughes said he was under obliga-
tions to Martindale, and would "give off" for him, but for
no other man. At this conversation Wiley insisted that
Hughes should consent to the sale of the corn, also, to Mar-
tindale, but this Hughes declined to do. They agreed to go
the next morning and examine the millet to see whether it
was damaged. Hughes went according to agreement, but
Wiley had gone to Howard, and Hughes returned home with-
out having made an examination of the millet. Hughes says
that he heard about the 24th of October that Wiley had sold
the millet to Chandler, a neighbor, and as a matter of fact
Wiley sold the millet on the 24th day of October, and before
the expiration of the time within which it was to be measured
and paid for. Hughes in conversation with Wiley said he
would not pay for damaged millet; that his contract was for
good No. 1 millet; that he would pay for every spear of good
millet.

We have carefully read and considered both his direct and
cross examination as to the millet, and all that was said about
it, and we are at a loss to account for the ruling of the learned
district judge on the special demurrer to the plaintiffs' evi-
dence on this branch of the case. It is fair to assume from
the brief of counsel who tried the case below, that the special
demurrer was sustained on the theory that the absolute title to
the millet passed to and became vested in Hughes and Zeek
at the time the contract was made, to wit, on the 6th of Sep-
tember, 1884, and that Hughes and Zeek could only bring an
action for conversion, or possibly might maintain replevin.
This is a misconception of the law so far as the question of
title is concerned. A fair construction of the contract is, that
at the time of its execution the millet was standing in the field,
the obligation to cut and stack was cast upon Wiley, and
within thirty days after he had done this it was to be measured
and paid for by Hughes and Zeek. This necessarily implied
that it was to be cut when it was in good condition to make

good feed; that it was to be properly stacked, and that fire-guards were to be broken around the stacks, so as to protect it from fire. Hughes and Zeek were to pay for it when it was put in this condition, and the title would not pass to them until these preliminary conditions had been performed by Wiley. If Wiley had not thus performed these conditions, could he have maintained an action against Hughes and Zeek for the contract-price of the millet? There was material error in the ruling of the court on the special demurrer, and for this error we recommend that the judgment of the district court be reversed, and the cause remanded with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.