## In re SANDERS' ESTATE.
### SANDERS v. SANDERS et al.

No. 6768—Opinion Filed Oct. 9, 1917.

(168 Pac. 197.)

(Syllabus.)

1. Marriage — Common-Law Marriage — Presumption.

The law is astute to preserve the sanctity of the marriage relation, the legitimacy

of children, and the stability of descent and distribution, and therefore presumes innocence and virtue in the absence of proof to the contrary.

**2. Infants—Action—Protection of Infants —Rights.**

It is the duty of courts to guard with jealous care the interests of minors in actions involving their rights. No presumption can be permitted against an infant, but, on the contrary, every presumption must be indulged in his favor, and a guardian ad litem or other person representing such minor must see to it that every question available is urged on behalf of said minor, and in case of a failure to discharge this duty, it becomes the imperative duty of the court to see that the infant's rights are protected.

**3. Marriage — "Common-Law Marriage" —Relation.**

A common-law marriage may exist in this state, and when parties capable of entering into the marital relation agree to be and become husband and wife, and in pursuance of such agreement enter into and thereafter maintain the marriage relation, a common-law marriage exists.

**4. Same — Common-Law Marriage—Validity.**

Marriage in the legal sense is a civil contract, and statutes regulating the form of entering into the marriage relation are usually directory, and where such statutes do not expressly prohibit or forbid other forms of marriage, a common-law marriage, consummated in accordance with the rules of the common law, is valid.

**5. Same — Common-Law Marriage — Evidence.**

Evidence was offered to show that the parents of plaintiff had entered into the marriage relation according to the rules of the common law. This evidence was excluded. Held, error.

Error from District Court, Hughes County; John Caruthers, Judge.

Petition by Nathan Sanders, minor, by John Cordell, guardian and next friend, in the matter of the estate of James B. Sanders, deceased, praying distribution of the estate, to himself as the only heir at law, opposed by Elizabeth Sanders and others. From a judgment of the district court affirming a judgment against petitioner, he brings error. Reversed and remanded for new trial.

B. B. Blakeney and Hunter Johnson, for plaintiff in error.

Geo. L. Mann and Harry H. Diamond, for defendants in error.

HARDY, J. Plaintiff in error filed his petition in the county court of Hughes county, in administration proceedings pending upon the estate of James B. Sanders, deceased, praying distribution of said estate to himself as the only heir at law of said James B. Sanders, deceased. From an adverse decision an appeal was prosecuted to the district court, where a like judgment was rendered and the case brought here.

Evidence was offered at the trial to show the existence of a common-law marriage between Sanders and the mother of plaintiff in error, but was excluded. In the petition seeking distribution to plaintiff it was alleged that he was the son of said Sanders and Peggy Harper, who were never married, but all objections that the evidence offered was outside the issues are waived, and the question whether said evidence was material submitted to the court for an opinion thereon. This concession of counsel gives recognition to the policy of the law where the rights of minors are involved and where the question of legitimacy is concerned. It was said in Coachman v. Sims et al., 36 Okla. 536, 129 Pac. 845, that:

"The law is astute to preserve the sanctity of the marriage relation, legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue in the absence of proof."

The same policy was again expressed in the first paragraph of the syllabus in Bolling et al. v. Campbell, 36 Okla. 671, 128 Pac. 1091, where it was said:

"It is the duty of the courts to guard with jealous care the rights of minors in actions brought against them. No presumption against an infant can be permitted, but, on the contrary every presumption is indulged in his favor, and a guardian ad litem must see to it that every question available in the defense of his ward is urged and acted upon by the court; and in case of the failure of the guardian ad litem to properly discharge his duty in that or any other respect, it becomes the imperative duty of the court to protect the infant's rights."

There is no reason why a different rule should apply here. Plaintiff in error was a minor about three years old, prosecuting his claim by a guardian and next friend, and his right to a distribution of the estate claimed might be established by proof that a common-law marriage existed between his parents; and, when evidence was offered tending to show that such relation existed, the court should have admitted it, and opportunity to amend the pleadings, if necessary, should have been afforded. If there was any question about the correctness of these views, it has been waived

by counsel for defendants in error, who recognize the solicitude of the courts for the interests of minors and the jealous care with which their rights are guarded.

The offer of testimony was as follows:

"I here offer to show that in the month of March, 1909, Sanders said to her that he wanted to marry her, and said, 'We will commence now and marry and live together as husband and wife under the Indian custom, and we will go up to town some time and get a license and have a ceremonial marriage'; that he spoke to her father about it, and that he consented in her presence, and that they since that time lived together as husband and wife; that he deferred getting a license and having a ceremonial marriage; that she spoke to him; and that he put her off from time to time, and at one time refused to do so, but a few days before his death, in the presence of an interpreter, told her father that he would get a license and be married on Christmas, 1910, but continued all the time to live with her as her husband, holding her out as his wife under the Indian custom."

The evidence offered would tend to establish the existence of a common-law marriage between Sanders and Peggy. There is no evidence in the record that throws any doubt upon the fact that plaintiff in error was the son of Sanders and Peggy. At the time the case was tried, the decision of this court in Re Love's Estate, 42 Okla. 478, 142 Pac. 305, L. R. A. 1915E, 109, wherein it was held that a common-law marriage might exist between parties in this state, had not been rendered, and it was probably the view of the trial court in holding this evidence immaterial that such a marriage was not valid under the laws of this state. In the case referred to, in a well-considered opinion by Commissioner Brewer, it was held, in line with the great weight of authority and following previous holdings in both Oklahoma and Indian Territories, that a common-law marriage was valid in this state, and this declaration of the law has been approved since that time in the following cases: Palmer v. Cully, 52 Okla. 454, 153 Pac. 154; James et al. v. Adams, 56 Okla. 450, 155 Pac. 1121.

In its legal sense marriage is a civil contract, entered into between parties capable of contracting, and it is not essential to the validity of such contract of marriage that a ceremony shall be selemnized by a clergyman. Statutes which regulate the manner of entering into the marital relation are held to be directory, and where they do not contain an express prohibition against other forms of marriage nor declared void a marriage entered into other than as prescribed therein, a marriage consummated according to the rules of the common law is valid. In re Love's Estate, supra.

The evidence offered, if true, would show that Sanders and Peggy entered into an express agreement to assume the marital relation, and in pursuance of said agreement assumed the relation of husband and wife and cohabited together, and that as a result thereof the plaintiff in error was born. But it is contended that the evidence which was admitted conclusively shows that such a marriage was not entered into. Upon this point the evidence shows that Peggy and Sanders had been acquainted some seven or eight years, and that he first began to visit her in October, 1908, and about that time the relations existing between them were commenced. Questions asked her, seeking to show what conversations were had between her and Sanders, were held to be improper, and answers not permitted, in keeping with the views of the court that such evidence was immaterial. The relationship thus commenced between them continued up to and after the birth of the child and to the death of Sanders. Peggy was a full-blood Indian, and at the time the relations commenced between them was living at the home of her father and mother and Sanders was living on the allotment of her brother, about a mile distant. Sanders would visit Peggy at the home of her parents very frequently—some of the evidence showing every Saturday and often during the week—and some of the evidence tends to show that he was there almost every day. He would frequently stay all day and all night, and he and Peggy would occupy the same bed. After the birth of the child, he furnished Peggy money with which to pay for the services of the attending physician, and at various times furnished her different sums to purchase clothes for the child, and caused her to have pictures made of it, one of which was given to him, and on one or two occasions he bought some toys for it. He told Peggy's father to take care of her, and he would pay the expense, and gave her father money at various times for that purpose, and at one time gave him a new wagon, presumably for the same purpose. Shortly before his death, he moved from the place where he was living to another place further down the river, about four miles distant from the home of Peggy's parents. While living on her brother's place he and a young man whom he had reared lived together. Sanders called the home of Peggy's

parents his home, and never at any time, so far as disclosed, denied that he was the father of said child. Shortly before his death he told Peggy's father that he was going to get ready and come after the woman and child, and he told her that after Christmas they would go to his home. Upon these facts the court found that the relations existing between Sanders and Peggy were illicit, and that plaintiff in error was an illegitimate child of such relations. We think this finding was against the clear weight of the evidence, and that if the evidence offered had been admitted and had been found by the court to be true, there could have been no question but that a common-law marriage had been entered into. It is shown that during the time these relations continued, she sustained no such relations with any other, and we have no doubt that she believed in her simple way that she was becoming the wife of this white man, and that her parents so believed and acquiesced in the arrangement, and that Sanders himself had no other thought at the time. There is no evidence in the record which shows to the contrary, unless it be upon one occasion she asked him to get the license and have the ceremony performed, which he declined to do, although he afterwards agreed that he would do so, but wanted to delay it to some future time.

We think the court committed error in excluding the evidence, and that, if admitted, it would have an important effect upon the decision of the court upon the question as to whether the relations between Sanders and Peggy were legitimate or meretricious.

Because of this view of the case, it is not necessary to discuss the other question presented, and the judgment is therefore reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

All the Justices concur, except TURNER and OWEN, JJ., absent.