## OGLE et al. v. OKLAHOMA CITY HORSE & MULE COM. CO.

No. 23931.     June 19, 1935.

Everest, McKenzie, Halley & Gibbons, for plaintiffs in error.

Howe, Head & Wheeling, for defendant in error.

PER CURIAM. This action was commenced in the district court of Oklahoma county and suit was filed for recovery of the balance of a payment on hay. The Oklahoma City Horse & Mule Commission Company will be referred to as it appeared in the court below, plaintiff, and the other parties as defendants.

Plaintiff purchased a quantity of hay from defendants and paid $1,800 thereon. The hay owned by defendants was in two barns; one barn, referred to as the south barn, contained from 100 to 110 tons of baled hay; the other barn, referred to as the north barn, contained from 50 to 60 tons of baled hay and about 40 tons of loose hay. Plaintiff started hauling from the south barn and hauled about 73 tons. Before all of the hay had been removed from the south barn, the north barn was struck by lightning and destroyed. Defendants refused to permit plaintiff to have more hay from the south barn. Plaintiff sued to recover $490.25, the difference between the hay received and the $1,800 paid, and defendants by answer and cross-petition asked judgment for $611.66 contending that the title to the hay burned had passed to plaintiff, and that plaintiff had received $611.66 in hay in excess of the $1,800 paid. The controversy was over the title to the hay which was burned. Both parties waived a jury and the cause was tried to the court. From a judgment rendered in favor of plaintiff, defendants have appealed.

Defendants assign as error the rejection of certain testimony of D. C. Ogle as to a conversation held with Elmer Seybold, president of plaintiff company, in making the sale of the hay. The sale of the hay was made by the defendant Ogle in conversations with Seybold and C. W. Phillips. Elmer Seybold died before the trial and the court sustained an objection to the testimony of Ogle as to this conversation. The objection was based on section 271, Okla. Stats. of 1931, the part applicable being as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. * * *"

A statute such as this, that has for its purpose disqualifying a witness to submit testimony in his own behalf, is not to be extended by construction. The statute is to be strictly construed. Interest in the result of litigation does not operate to disqualify a party as a witness in the absence of a statute so providing. This court has held in the case of Grosshart v. McNeal, 95 Okla. 102, 218 P. 329, as follows:

"We think that the rule has been well settled that a statute such as this, that has for its purpose disqualifying a witness to submit testimony in his own behalf, is not to be extended by construction; that the statute such as here undertakes to disqualify in the result of litigation does not operate to disqualify a party as a witness in the absence of a statute so providing. Where a statute is to be strictly construed. Interest a person from testifying in his own behalf, disqualification arises only upon the specific

conditions named in the statute itself. The court cannot extend the exception embraced in the statute by interpreting therein provisions not found in the statute itself. Williams v. Campbell, 84 Kan. 46, 113 P. 800; Burlington v. Beard, 55 Kan. 773, 42 P. 320; Sarbach v. Sarbach, 86 Kan. 894, 122 P. 1052; Bryan v. Palmer, 83 Kan. 298, 111 P. 443, 21 Ann. Cas. 1214; Hess v. Hartwig, 83 Kan. 592, 112 P. 99. It will be noted that the statute does not purport to disqualify a person to testify in his own behalf in respect to a transaction or communication had personally by such party with a deceased person. It does so only when the adverse party is the executor, which is not this case, the administrator, which is not this case, heir at law, which is not this case, next of kin, which is not this case, surviving partner, which is not this case, or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person."

This has been followed in the cases of Scott v. Bennett, 138 Okla. 272, 281 P. 251, and Devin v. Mitchell, 142 Okla. 233, 286 P. 335; and in the case of Chickasha Compress Co. v. Southern Burner Co., 159 Okla. 107, 14 P. (2d) 367, this court held that a conversation with an agent and manager of a corporation defendant was clearly admissible, although the agent and manager was deceased at the time of trial.

Since the conversation with the president of plaintiff company, since deceased, was not within the prohibition of this statute, the evidence was admissible, but in this case the court, after first sustaining the objection, and after formal offer of the evidence had been made and rejected, permitted the witness to testify as to the conversation. The witness, without objection, was permitted to testify to the contract made with Seybold and to testify to all of the matters embraced in the offer of the evidence by defendants. The witness was examined thereon, and since the testimony which had been rejected was later admitted, we hold that the earlier rejection of this testimony was harmless error and will not require a reversal of this case, O. S. 1931, section 3206; Mounts v. Boardman, 79 Okla. 90, 191 P. 362.

■ The other assignments of error can be considered together. That the decision of the court is not sustained by the evidence and is contrary to law, error of the court in holding that title to the hay did not pass to plaintiff, and error in the amount of the judgment, will require a discussion of the evidence. The issue between the parties was as to the passing of title of 50 tons of hay, plaintiff contending that it had purchased 100 tons and defendants contending that a completed sale had been made of 150 tons. C. W. Phillips testified for plaintiff that he was present when Elmer Seybold (deceased at time of trial), president of plaintiff company, and D. C. Ogle, one of the defendants, made a deal for 100 tons of hay at $18 per ton, and Seybold said he would send check next day for $1,800. That they discussed buying 150 tons, but Seybold said he would just pay for 100 tons, and when that was taken out, they would re-estimate the hay and he would give Ogle more money. Seybold just looked at the hay in one barn, which witness estimated contained about 110 tons, and Seybold stated that he would be responsible for the hay in that barn. Check for $1,800 was sent defendants and hay was removed to the extent of 73 tons, but in the meantime the other barn had burned and defendants stopped plaintiff from hauling more hay from the barn from which they had been hauling.

The evidence of defendants was mainly by D. C. Ogle, who testified that after his first conversation with Seybold he had another, and sold him 150 tons of hay, but his evidence also was that after 100 tons was removed he, with plaintiff, would determine how much hay was left and make a new estimate. This was never done. The check delivered to Ogle for $1,800 had written on it "for 150 tons of hay." Two classes of hay were being hauled, brown hay at $15 per ton and green hay at $18 per ton. Ogle also testified that with the check a written contract was brought to him and the written contract was admitted in evidence. The contract called for the purchase of 150 tons of alfalfa hay for $1,800, to be paid in advance, and after 100 tons had been removed, new estimate of hay to be made and advance payment made on new estimate. Ogle did not know who brought him this contract, the corporate name "Oklahoma City Horse & Mule Commission Company, By ——————" appeared by rubber stamp, but was not executed by any officer of the company and was not dated. The secretary testified that it had never been presented to him or to President Seybold, and that it had not been executed by any officer of the company.

Defendants contend, and cite a number of authorities to the effect that a valid contract in writing, signed by one of the parties only, but fully recognized and acted upon by both parties, is binding. We agree

with this contention, but there is nothing in the evidence to show that this contract was executed by or authorized by plaintiff corporation, or that the president, secretary, or officers thereof had any knowledge whatever regarding it.

There is nothing to show that they acted on it or took any action under it. There is an entire absence of evidence as to any action by the plaintiff corporation which would be an adoption or an acceptance of this contract, and in the absence thereof, this contract would not be binding upon them and would not determine this case.

The question as to when title passes in sales of personal property is primarily one of the intention of the parties, to be derived from the contract or the circumstances of the case. It is a question of fact for the jury, and their verdict will not be disturbed, nor the judgment of a court, when tried by the court, unless the verdict or judgment is not supported by the evidence. The trial court, after hearing the evidence, found that the title to the burned hay did not pass to the plaintiff, and the evidence amply sustains that finding. The defendants in this case had hay in two barns; something more than 100 tons in the barn from which plaintiff was hauling. about 60 tons of baled hay, and about 40 tons of loose hay in the other barn. There were two classes of the baled hay, brown hay at $15 per ton and green hay at $18 per ton. The evidence of both parties was that after 100 tons were removed, a new estimate of the hay between the parties would be made and an advance payment made on the new estimate.

The general rule is that a sale of personal property is not completed while anything remains to be done to determine its quantity, as by weighing, measuring, counting, if the price depends on this, unless this is to be done by the buyer alone, and there is no further evidence to show the intention of the parties that the title shall pass before the price or quantity is so determined. There was no further evidence to show the intentions of the parties that the title should pass at an earlier time in this case. From the time of the early English case of Zagury v. Furnell, 2 Campb. 242, where several bales of skins (stated in the contract to contain five dozen in each bale) were sold at a certain sum per dozen, but it was the duty of the seller to count over the skins to see how many each bale actually contained, and before doing so they were consumed by fire, and Lord Ellenborough and Sir James Mansfield held that the loss fell entirely on the seller, this has been the general rule in the absence of an express intention of the parties to have title pass at once. This court has held in the case of Brooks v. Tyner, 38 Okla. 271, 132 P. 683, as follows:

"The rule is that, if, under a contract for the sale of specific goods, the seller is bound to do something to the goods for the purpose of putting them in a deliverable state, that is, into a condition in which the buyer is bound to accept them, unless a different intention appears, the property does not pass until such thing is done; as where trees are to be trimmed, cotton to be ginned and baled, fish to be dried, crops to be gathered or threshed, cattle to be fattened, hops to be baled, machinery to be set up, or lumber to be sawed or planed, the doing of such thing is presumptively a condition precedent to the transfer of property. Acraman v. Morrice, 8 C. B. 449; Screws v. Roach, 22 Ala. 675; Foster v. Ropes, 111 Mass. 10; Blackwood v. Cutting Packing Co., 76 Cal. 212, 18 P. 248, 9 Am. St. Rep. 199; Low v. Freeman, 12 Ill. 467; Hughes v. Wiley, 36 Kan. 731, 14 P. 269; Fairbanks v. Richardson Drug Co., 42 Mo. App. 262; Chambers v. Austin, 57 App. Div. 359, 68 N. Y. Supp. 53; Cooper v. Bumpass, 1 White & W. Civ. Cas. Ct. App. 498."

We have carefully read the record and briefs in this case. To us the evidence is convincing that title to but 100 tons of hay passed to plaintiff, but, as to the remaining 50 tons, that a new estimate or appraisal was to be made by the parties after the removal of the 100 tons—a necessary act, since there was brown hay at $15 per ton and green hay at $18 per ton, and a quantity of loose hay—and an advance payment was to be made for the 50 tons when the estimate and grade had disclosed the price to be paid therefor. That until this estimate and payment were made, the title to the remainder of the hay remained in the defendants. The judgment is accordingly affirmed.

The Supreme Court acknowledges the aid of Attorneys W. J. Otjen, Harry C. Kirkendall, and Louis A. Reilly in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Otjen and approved by Mr. Kirkendall and Mr. Reilly, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. WELCH, J., disqualified.