## GILMORE, GARDNER & KIRK OIL CO. et al. v. HARVEL et al.

No. 35789.    June 16, 1953.

258 P. 2d 632.

Looney, Watts, Ross, Looney & Smith, Oklahoma City, for petitioners.

Porta & Weaver, El Reno, and Mac Q. Williamson, Atty. Gen., for respondents.

JOHNSON, V.C.J. This is an original proceeding brought by Gilmore, Gardner & Kirk Oil Company and Tri-State Insurance Company, its insurance carrier, as petitioners, to review an award made to Marguerite Harvel as the wife of Leo Paul Harvel under the provisions of the Death Benefit Statute, 85 O.S. 1951 §3.1, due to the death of Leo Paul Harvel who was killed in a motor vehicle accident at Okemah, Oklahoma, February 23, 1952. There is no dispute as to the cause of the death of said Leo Paul Harvel, or that it arose out of and in the course of the employment.

Claimant testified that she and Leo Paul Harvel were husband and wife and were married in May, 1945, and had lived together as husband and wife since that date until his death; that in 1945 they agreed to live together as husband and wife and secured an apartment at 618 South Harvey in Oklahoma City; that they later moved to and lived at an apartment on 609 South Walker, Oklahoma City. Claimant identified nine Christmas cards sent to her and her husband. Two of these cards were sent by relatives and members of the family of L. P. Kirk, one of the partners in the employer company. Claimant further testified that at parties given for the employees of the employer company L. P. Kirk introduced claimant and her husband as husband and wife and at another party given by said employer Gardner introduced herself and her husband as husband and wife.

Juanita Duran testified that she knew Mrs. Harvel; that Mrs. Harvel worked at Hill's Grocery Store and Mrs. Hill called her Mrs. Harvel; that several people witness knew called claimant and her husband Mrs. and Mrs. Harvel.

Warren Price testified that he was a truck driver for the employer for three years and knew claimant and Leo Paul Harvel as husband and wife; that Mrs. Harvel would drive her husband home

from his work when he came in from driving a truck; that Leo Paul Harvel introduced claimant to witness as his wife; that he attended the parties where L. B. Kirk introduced claimant and Leo Paul Harvel as husband and wife.

Petitioners offered controverting testimony which we deem it unnecessary to review.

Petitioners first argue that the testimony of claimant as to the relationship with Leo P. Harvel was incompetent and should be excluded by reason of what is generally known as the "Dead Man's Statute," 12 O.S. 1951 §384. With this contention we cannot agree. The statute provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *."

In Ogle v. Oklahoma City Horse & Mule Commission Co., 173 Okla. 34, 47 P. 2d 130, it is stated:

"The rule is that a witness is competent to testify in his own behalf as against his adversary. His disqualification to testify is the exception to the rule. Section 271, St. 1931, disqualifies a witness to testify in his own behalf as to transactions had personally by the witness with a deceased person only when the conditions mentioned in said statute exist. Said statute cannot be extended by interpretation to render the witness offered disqualified, except where the opposite party is brought by the express provisions of said statute within one of the classes of persons therein specifically named."

See, also, Grosshart v. McNeal, 95 Okla. 102, 218 P. 329; Berry v. Janeway, 206 Okla. 555, 245 P. 2d 71.

There was no adverse party in the case under consideration named in the statute above referred to or included

therein by implication. The testimony of claimant was competent.

It is next argued that the evidence is insufficient to establish a common-law marriage. We have carefully reviewed all the testimony offered to support the relationship of marriage and the controverted testimony and are of the opinion that the evidence is sufficient to sustain the finding of the State Industrial Commission. In re Giordano's Estate, Mueller v. Giordano, 197 Okla. 693, 174 P. 2d 236; In re Sanders' Estate, Sanders v. Sanders, 67 Okla. 3, 168 P. 197; Fisher v. Fisher, 116 Okla. 129, 243 P. 730; Tiuna v. Willmott, 162 Okla. 42, 19 P. 2d 145. In Sanders v. Sanders, supra, it is stated:

"A common-law marriage may exist in this state, and when parties capable of entering into the marital relation agree to be and become husband and wife, and in pursuance of such agreement enter into and thereafter maintain the marriage relation a common-law marriage exists."

The fact situation in Re Giordano's Estate, Mueller v. Giordano, supra, is somewhat similar to that in the case under consideration. Therein certain witnesses also testified that they did not know the parties were married. Therein it is stated:

"Where some testimony tends to show that a man and woman are generally reputed in a community to be husband and wife, and other testimony tends to show they are not, the evidence does not present a case of 'divided' or 'singular' reputation, but merely a conflict of evidence as to the general reputation of the parties' relationship in the community."

After a review of all the evidence, we are of the opinion and hold that the State Industrial Commission was authorized to enter an award to Marguerite Harvel as the wife of Leo Paul Harvel.

Award sustained.

HALLEY, C.J., and WELCH, CORN, DAVISON, O'NEAL, and WILLIAMS, JJ., concur.