DAISY BOURELLE, APPELLANT, V. SOO-CRETE, INC., ET AL., APPELLEES.

87 N. W. 2d 371

Filed January 3, 1958. No. 34311.

*Leamer & Graham,* for appellant.

*Mark J. Ryan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a case under the Nebraska workmen's compensation law. The case was originally instituted in the compensation court by Daisy Bourelle as plaintiff against Soo-Crete, Inc. and Guinther Ditching and Piping, defendants. The case was tried to a judge of the workmen's compensation court, wherein the plaintiff obtained an award of $300 for burial expenses and $30 per week

for a period of 325 weeks from and after February 15, 1956, as a dependent of Arthur Bourelle, deceased. The defendants filed a waiver of rehearing and elected to appeal directly to the district court. After hearing in the district court for Dakota County, judgment was rendered in favor of the defendants. The plaintiff filed a motion for new trial which was overruled. From the overruling of her motion for new trial, the plaintiff appeals. The action is for review here de novo.

For convenience we will refer to Daisy Bourelle as the plaintiff or as Daisy, and to Arthur Bourelle as Arthur or as the deceased.

The record shows that the plaintiff was married to John O'Connor in 1918, at Pierce, Nebraska. John O'Connor left the plaintiff in 1933, and the plaintiff testified that she had not seen him since that time. She further testified that she received a letter from him in 1935 to the effect that he was obtaining a divorce and proposed to remarry. This letter is not in evidence. She was under the impression that he had obtained a divorce in 1935. John O'Connor was awarded a divorce from Daisy O'Connor by the circuit court of Pennington County, South Dakota, on December 26, 1944, on the grounds of desertion. Service was obtained by publication, and it was a default decree.

Arthur Bourelle had been married twice prior to the time he started living with plaintiff. On January 24, 1925, Emma Bourelle was awarded a divorce from Arthur Bourelle by the district court for Thurston County, Nebraska. On January 28, 1937, Olivia Bourelle was awarded a divorce from Arthur Bourelle in the district court for Thurston County.

On March 17, 1937, Daisy started to live with Arthur in Walthill, Nebraska, and lived with him until he was killed in an accident arising out of and in the course of his employment with the defendants on February 15, 1956. Arthur and Daisy never went through a ceremonial marriage, and she claimed to be his wife by

virtue of a common-law marriage. They lived in Walt-hill, Nebraska, from March 17, 1937, until the fall of 1939 when they moved to Sioux City, Iowa. In the fall of 1942, they moved from Sioux City, Iowa, to Kearney, Nebraska, where Arthur had work. They returned to Walthill in the fall of 1944, and lived there until the summer of 1945, at which time they again moved to Sioux City, Iowa. The first 2 weeks after they moved they lived in the home of Marie Miles, a niece of Arthur, and subsequently moved to 1415 Grandview Boulevard. During all of the time from March 17, 1937, until his death, Arthur supported the plaintiff, paid all the bills contracted by her, and introduced her as his wife in the various communities where they lived and when they made visits to other states. They lived in Sioux City, Iowa, in 1945 and 1946, and held themselves out to the public as husband and wife, and the plaintiff never went by any other name than Daisy Bourelle during that time. During the time they lived in Sioux City, Iowa, they had a joint bank account in the Woodbury County Savings Bank. The signature card was signed by Arthur Bourelle and Mrs. Arthur Bourelle. On May 23, 1946, Arthur O. Bourelle and Daisy A. Bourelle entered into a real estate contract in Sioux City, Iowa, to purchase real estate in Crystal Lake Park, an addition to South Sioux City, Nebraska. On May 31, 1946, this property was conveyed by warranty deed to Arthur O. Bourelle and Daisy A. Bourelle as husband and wife, while they were living in Sioux City, Iowa. They moved to this home in Nebraska sometime in June 1946, and lived in Nebraska thereafter.

The plaintiff testified that since 1937 she and Arthur had filed joint federal income tax returns which she signed as Arthur's wife; that she wears a ring evidencing a marriage; and that she wore the ring in public. Since 1945, she and Arthur took trips with relatives to Bristol, Rhode Island, Chicago, Illinois, and New Orleans, Louisiana. On the trip to Bristol, Rhode Island, they stopped

at the home of Arthur's son at Waterloo, Iowa. On these trips they stayed in hotels, occupied the same bedroom, were registered as husband and wife, and held each other out as husband and wife. During the period just prior to Arthur's death, they lived in Rapid City, South Dakota, where Arthur was working on a construction job. They lived in an apartment for which Arthur paid the rent. In November 1955, Arthur made application for life insurance, designating Daisy M. Bourelle as beneficiary. They also had a bank account in the Nebraska State Bank of South Sioux City, Nebraska, with the right of survivorship. Daisy has since withdrawn the funds from this account.

The plaintiff further testified that they always spent New Years with the Miles and other relatives in Sioux City, Iowa, and on those occasions Arthur held her out as his wife; that on many occasions since 1937, he introduced her as his wife; and that they observed wedding anniversaries together. The plaintiff further testified that mail addressed to her as Mrs. Arthur Bourelle, and mail addressed to Arthur Bourelle was delivered to the address of 1415 Grandview Boulevard, Sioux City, Iowa.

The record shows that Arthur was a patient in the hospital at Sioux City, Iowa, from April 22 to May 7, 1946. He gave his address as 1415 Grandview Boulevard, Sioux City, Iowa, his nearest relative as his wife, Mrs. Daisy Bourelle, and his occupation as a mechanic at Wagner Johnson Company, Sioux City, Iowa.

On cross-examination the plaintiff testified that she did make claim of a common-law marriage to Arthur Bourelle prior to his death, and it was her belief that since March 17, 1937, she was married to Arthur, and held herself out as his wife since that time.

Marie Miles, a niece of Arthur, testified that she resided in Sioux City, Iowa; that she had known the plaintiff as Daisy Bourelle since 1937, and had visited her home many times; that they lived with her in 1945 for approximately 2 weeks or more before they moved to

Grandview Boulevard; that Daisy and Arthur occupied the same bedroom; that at all times Arthur held Daisy out as his wife and never introduced her in any other manner and that was the only name she ever went by; and that he supported her and gave her money. This witness was present when Daisy and Arthur bought the property in South Sioux City. Before Arthur would purchase the property he insisted that "Mom," as he called Daisy, look at it and see if it was satisfactory. She was with Daisy and Arthur every New Years Eve and Day since 1937. It was a "friendship tradition." When Arthur was in the hospital in Sioux City, Daisy stayed with this witness and visited the hospital every evening. She went with Daisy. Daisy was in the hospital on one occasion in Sioux City. This witness went to visit her and inquired as to which room Mrs. Daisy Bourelle occupied. Daisy was living with Arthur at the time of his death and Arthur was supporting her.

Mrs. Shoop testified to substantially the same set of facts. She further testified that she visited Arthur and Daisy; that Arthur referred to Daisy as "Mom" or "Mama" and always introduced her as his wife; and that Arthur supported Daisy. This witness was a niece of Arthur.

Mary Ann O'Connor testified that she is the daughter of Daisy, and lives in South Sioux City; that she acknowledged Arthur as her stepfather and was living at his home with her mother at the time of his death; that Arthur had supported Daisy since 1937; that at the time of Arthur's death Daisy and Arthur were living together and reputed in the community to be husband and wife; that she stayed with Daisy and Arthur many times over weekends in Sioux City, Iowa, and on these occasions Arthur and Daisy occupied the same bedroom; that Arthur always held Daisy out as his wife on these occasions; that they received their mail at that address; that since 1937 her mother was always referred to as Daisy Bourelle; and that Arthur was her sole support.

This witness further testified that she had seen Arthur give Daisy money and write checks for her; that the three of them went to Bristol, Rhode Island; that they stopped at hotels and at the home of Arthur's son at Waterloo, Iowa; and that Arthur introduced Daisy as his wife on such occasions.

The defendants offered in evidence certain sections of the Iowa statutes and section 200 of the Soldiers' and Sailors' Civil Relief Act of 1940.

The plaintiff contends that the decision of the trial court is contrary to the evidence and the law.

There is no dispute in this case that the accident resulting in the death of Arthur Bourelle arose out of and in the course of his employment with the defendants.

We deem it advisable to first take up the question with reference to the competency of the testimony of the plaintiff as related to section 25-1202, R. R. S. 1943. In this respect, the record discloses the following: "Q During the time that you and Arthur Bourelle lived in the State of Iowa in the year 1945 and 1946, did you have a conversation with him concerning your marital relationship? * * * A Yes. * * * Q Where did they take place? A 1415 Grandview, Sioux City, Iowa. Q What did you say and what did Arthur Bourelle say, if anything?" This question was objected to for the reason that it called for a transaction or conversations with a deceased person and was barred under the provisions of section 25-1202, R. R. S. 1943. The trial judge stated that in his opinion the objection was good, but that he would permit the plaintiff to make her record and would reserve final ruling until the cause was submitted and came up for final disposition. The plaintiff answered: "Well, just as near as I can remember it was when we wanted to buy a home we agreed to go ahead and buy it as husband and wife and to continue together. Q Did you have any other conversations while living in the State of Iowa in 1945 or 1946 concerning your marital relations? A We repeated our vows together. Q And

what do you mean by 'you repeated your vows'?" There was an objection, and the answer of the witness was stricken. The plaintiff made an offer to prove that Arthur Bourelle and Daisy Bourelle, while in the State of Iowa during 1945 and 1946, on numerous occasions repeated their vows and stated to each other that according to the Bible and in the eyes of God they were man and wife. The same objection was made to the offer to prove, on the ground that such testimony was in violation of section 25-1202, R. R. S. 1943. The objection was sustained.

Section 25-1202, R. R. S. 1943, provides in part: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, * * *."

This section has been the cause of controversy and the subject of frequent interpretations by this court. In Sorensen v. Sorensen, 68 Neb. 509, 103 N. W. 455, in the opinion on the third rehearing, this court quoted from the case of McCoy v. Conrad, 64 Neb. 150, 89 N. W. 665, as follows: " 'If a party is so placed in a litigation that he is called upon to defend that which he has obtained from a deceased person, and make the defense which the deceased might have made, if living, or to establish a claim which the deceased might have been interested to establish, if living, then he may be said, in that litigation, to represent a deceased person; but where he is not standing in the place of the deceased person, and asserting a right of the deceased which has descended to him from the deceased (that is, where the right of the deceased himself, at the time of his death, is not in any way involved), and the question is, not what was the right of the deceased at the time of his death, but merely to whom has that right descended, in such a contest neither party can be said to represent the deceased.' "

The same question as here presented arose in the case of Gilmore, Gardner & Kirk Oil Co. v. Harvel, 208 Okl. 664, 258 P. 2d 632. This was an original proceeding brought by the employer and Tri-State Insurance Company, the insurance carrier, to review an award made to the wife of the deceased under the provisions of the Death Benefit Statute, 85 O. S. 1951, § 3.1. There was no dispute as to the cause of the death or that it arose out of and in the course of the employment of the deceased. One of the questions raised in the case was whether the claimant's testimony with reference to conversations had with the deceased person was competent under 12 O. S. 1951, § 384, referred to as the "Dead Man's Statute." While the statute is not worded the same as section 25-1202, R. R. S. 1943, it embodies practically the same subject matter. The statute provided: "No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *." The court held that under such statute the claimant had a right to testify in her own behalf as against her adversary. This case also involved a common-law marriage. The effect of the holding in the above-cited authorities is applicable to this case.

The benefits claimed by the plaintiff were benefits which descended to her by virtue of the death of Arthur Bourelle and she is the person whose right to such benefits is here involved. The defendants, as employers, did not stand in the relationship of representatives of the deceased Arthur Bourelle. The plaintiff's testimony heretofore set out is not barred by section 25-1202, R. R. S. 1943. We conclude that the court should have permitted this witness to testify, and

in failing to do so committed prejudicial error.

This brings us to the question as to whether or not a common-law marriage existed between the plaintiff and Arthur Bourelle as contended by the plaintiff.

A common-law marriage is not valid in this state unless entered into prior to the adoption of section 42-104, R. R. S. 1943, in 1923. See, Ragan v. Ragan, 158 Neb. 51, 62 N. W. 2d 121; Abramson v. Abramson, 161 Neb. 782, 74 N. W. 2d 919.

During the period of time herein involved a common-law marriage could be legally entered into in Iowa. See, Pegg v. Pegg, 138 Iowa 572, 115 N. W. 1027; In re Estate of Boyington, 157 Iowa 467, 137 N. W. 949; Love v. Love, 185 Iowa 930, 171 N. W. 257; State v. Grimes, 215 Iowa 1287, 247 N. W. 664; Bradley v. Bradley, 230 Iowa 407, 297 N. W. 856; In re Estate of Stopps, 244 Iowa 931, 57 N. W. 2d 221; Abramson v. Abramson, *supra*.

The law of Iowa as to common-law marriages is stated in Pegg v. Pegg, *supra*, as follows: "We recognize so-called common-law marriages as valid; but for such a marriage to be valid there must be a present agreement to be husband and wife, followed by cohabitation as such." See, also, In re estate of Medford, 197 Iowa 76, 196 N. W. 728.

In the case of In re Estate of Boyington, *supra*, the court said: "It is well settled that, while cohabitation and the reputed relation of husband and wife may be shown as tending to give color to the relation of the parties and the recognition each by the other of the existence of a marriage between them, the fundamental question is whether their minds have met in mutual consent to the status of marriage which will be sufficiently established if it appears that they have lived together, intending thereby to be husband and wife. Neither such intention nor consent can be inferred from cohabitation alone, and reputation is of no significance, save as it has a bearing on the question of intent. Sup-

porting this statement of the law as it has been recognized by this court, see Brisbin v. Huntington, 128 Iowa, 166; State v. Rocker, 130 Iowa, 239; McFarland v. McFarland, 51 Iowa, 565; Pegg v. Pegg, 138 Iowa, 572. It will be important, therefore, to examine the evidence relied upon for appellant, first, as to cohabitation; second, as to the general conduct of the parties toward each other in their relations with the public bearing upon the question of whether they held themselves out to the world as being husband and wife; and, third, as to the general repute in the community with reference to whether they were living together as husband and wife or in some other relation."

As stated in Love v. Love, *supra:* "If the parties are capable of contracting, and mutually agree that they are husband and wife, with the present intention of becoming such, and this is followed by a consummation of the marriage relation, the contract is complete. The consummation of the contract does not depend upon cohabitation for a period of time, but, like other contracts, it is complete when made. Marriage, whether solemnized in the usual way or by mutual consent and agreement, is generally followed by the parties' dwelling together, and performing the duties and obligations of the marriage relation. Proof, therefore, of continued cohabitation between parties who have held themselves out to the public as husband and wife justifies the inference that the parties are married."

In the case of In re Estate of Clark, 228 Iowa 75, 290 N. W. 13, it is indicated clearly that marriage may be established by direct testimony of eyewitnesses, by testimony of one of the contracting parties, by admissions and confessions of the parties while living together, by testimony as to cohabitation and repute during the time the parties are living together, and by other recognized legal testimony. See, also, State v. Wilson, 22 Iowa 364; State v. Nadal, 69 Iowa 478, 29 N. W. 451; Hanford v. Hanford, 214 Iowa 839, 240 N. W. 732.

As indicated by the above-cited cases, among the facts which, although not conclusive, are to be considered as evidence tending to prove marriage, are the facts that the woman assumed the man's name; that the parties introduced each other, or held each other out, as husband and wife; and that they were recognized as husband and wife by their relatives.

As stated in 55 C. J. S., Marriage, § 45, p. 902: "Marriage is a fact which may be proved like any other fact, and may be proved by direct or circumstantial evidence, or by documentary or parol evidence; and the weight and sufficiency of the evidence to prove marriage are governed by general rules of evidence." See, also, In re Estate of Clark, *supra.*

This court has held that the general rule is that the validity of a marriage is determined by the law of the place where it was contracted; if valid there it will be held valid everywhere. See, Forshay v. Johnston, 144 Neb. 525, 13 N. W. 2d 873; Abramson v. Abramson, *supra.*

The defendants make claim that where cohabitation is in its beginning illicit and meretricious, affirmative proof of a subsequent intention to change that relationship into the legitimate relation of husband and wife is essential to establish a common-law marriage where such marriages are recognized, and this intention must be shown by competent evidence.

The rule in Iowa is stated in In re Estate of Boyington, *supra,* as follows: "But it is well settled that, where cohabitation is in its beginning illicit, affirmative proof of a subsequent present intention to change that relation into the legitimate relations of husband and wife is essential to establish a marriage. Henry v. Taylor, 16 S. D. 424 (93 N. W. 641); Terry v. White, 58 Minn. 268 (59 N. W. 1013); Grimm's Appeal, 131 Pa. 199 (18 Atl. 1061, 6 L. R. A. 717, 17 Am. St. Rep. 796); Weidenhoft v. Primm, 16 Wyo. 340 (94 Pac. 453)."

While it appears that there was at one time an im-

pediment to any marriage being consummated by the plaintiff to Arthur Bourelle because of her marriage to John O'Connor, a divorce was obtained by John O'Connor from her in South Dakota on December 26, 1944. It is apparent that the impediment had been removed when the parties resided in Sioux City, Iowa, and there is no evidence to the contrary.

Bearing in mind the foregoing authorities and applying the same to the facts in this case, the evidence shows that Arthur Bourelle and Daisy Bourelle, while living in Sioux City, Iowa, in 1945 and 1946, asserted their vows of marriage to each other; that the parties held themselves out in the community in which they lived as husband and wife; that they were reputed by all who knew them to be husband and wife; that Arthur Bourelle, on all occasions, introduced the plaintiff to persons as his wife; that they lived together and cohabited together as husband and wife at their residence at 1415 Grandview Boulevard in Sioux City, Iowa; that mail was delivered there to Daisy Bourelle and to Arthur Bourelle and received by them as husband and wife; that they negotiated a contract for the purchase of real estate as husband and wife while residing in Sioux City, Iowa, and received a deed to real estate which they subsequently occupied in Nebraska, the deed being made and delivered in Iowa to the parties as husband and wife; that they attended New Years celebrations and birthday celebrations with relatives who considered the parties as husband and wife and never knew the plaintiff by any other name than Daisy Bourelle; that Arthur Bourelle gave her money with which to pay indebtedness and supported her; and that Arthur Bourelle referred to Daisy Bourelle affectionately as "Mom" or "Mama" and in all respects during his lifetime considered the plaintiff as his wife and she considered Arthur Bourelle as her husband. The defendants introduced no evidence to contradict any of the facts heretofore set out.

We conclude that the facts are sufficient to show a common-law marriage in the State of Iowa during the period that the parties lived in Iowa, in 1945 and 1946, and that the plaintiff was a dependent within the contemplation of the Nebraska workmen's compensation law, section 48-124, R. R. S. 1943, and entitled to compensation as set forth in the award of the workmen's compensation court in conformity with section 48-122, R. S. Supp., 1955, as the result of the death of Arthur Bourelle on February 15, 1956.

Some contention is made by the defendants that in the divorce obtained by John O'Connor from the plaintiff in South Dakota, it is not shown that there was any compliance with the provisions of the Soldiers' and Sailors' Civil Relief Act, section 200 of the act. It is the contention of the defendants that this is a mandatory provision of federal law which takes precedence over state law and must be strictly complied with in order to have a valid decree, consequently, such decree was void and of no force and effect. The plaintiff testified on rebuttal that she had never been in the military service of the United States nor with any country with which the United States was allied in the prosecution of any war at any time, and never served in the armed forces of the United States at any time. As we view the act it has no application to the plaintiff in this action.

For the reasons stated herein, the judgment of the trial court is reversed and the cause remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.