In the Matter of the ESTATE of Ivan HORNBACK, Deceased.

No. 42310.

Supreme Court of Oklahoma.

July 14, 1970.

Rehearing Denied Oct. 20, 1970.

Josh J. Evans, Beaver, for plaintiff in error.

Pitcher, Logan & Lowry, Vinita, for defendant in error.

HODGES, Justice.

Plaintiff in error contested the entering of a final decree, approving final account, determining heirs, final distribution to heirs and the discharge of administrator in the county court in the Estate of Ivan Hornback, deceased. After the decree was entered in the county court plaintiff appealed to the district court where trial was held de novo. Plaintiff claims to be the common law wife of the deceased. She asserts error of the trial court in making no provision for her in the final decree. Following an adverse decision of the district court plaintiff filed her appeal in this court. The decision of the district court is affirmed.

The assignments of error by plaintiff are: decision is contrary to the evidence and law in that where there is direct evidence of a common law marriage it is unnecessary to prove reputation of marital status; it is error to admit evidence of reputation of marital status where there is direct evidence; admissions of marriage should be given great weight and denials at isolated times given little weight; and irregularities in the proceedings and abuse of discretion of trial judge prevented plaintiff from having her day in court.

It was stipulated at the trial that the deceased, Ivan Hornback, and the plaintiff, Dorothy Dunn were married September 20, 1957; divorced June 13, 1963; filed a joint application to vacate divorce decree December 13, 1963; and Ivan Hornback died February 13, 1965. An application to vacate the divorce decree was filed but an order never entered.

Plaintiff testified that she and deceased had been married and lived together on a farm near Vinita, Oklahoma. That after the divorce she moved to Baxter Springs, Kansas where she worked during the week and visited or stayed with the deceased on the week ends.

A Mr. P testified for plaintiff that he had known the deceased for some time and that deceased had informed him he had filed an application to have the divorce set aside, paid $25.00 to have it done and that it had been set aside. Deceased had told him shortly before his death that his "cook" was coming back, and that he referred to his wife as his cook.

The sister of the plaintiff testified that the deceased spoke of the plaintiff as his wife. She indicated plaintiff worked in Baxter Springs, Kansas during the week and that deceased would take her to Oklahoma to live with him on the week ends. She said that plaintiff would always go by the name of Hornback while in Kansas.

Mrs. A testified she lived about a quarter of a mile from the deceased and that she often received phone calls for deceased and for the plaintiff. Upon cross examination she stated that she presumed deceased was single and nearly everyone in the community thought he was single.

Plaintiff testified she was the wife of the deceased. They had resumed relations after an application was filed to set aside the divorce. She testified she would work in Kansas during the week and come to Oklahoma to live with the deceased on the week ends. She stated she and deceased would in turn visit in their home. On cross examination plaintiff admitted she was uncertain whether the divorce decree was vacated. She said she used the name of Dorothy Dunn most of the time instead of Hornback because she was uncertain as to whether the decree had been vacated. She admitted signing a number of letters using the name Dorothy Dunn, many of which refuted her testimony, that she and deceased were husband and wife. One of these letters was written two months before his death *asking when they were going to be married.*

186

Defendant offered numerous witnesses who testified as to the reputation of deceased in the community being that of a single man. The Tax Assessor stated deceased told him he was single when he filed his homestead exemption and personal property application.

A Mrs. LF testified that she had not known the deceased and plaintiff prior to the day of deceased's death. She said on that day they came to her door asking for a jack as his car had become stuck. The witness testified:

"A. Well, he got stuck in the mud and asked if he could borrow a jack, and he went and got the jack, and he was putting the jack on backwards, that's why * * *

"Q. Just let me interrupt, did you have a conversation with Ivan before he had this attack?

"A. Yes, she was telling me.

"Q. Yes, just answer the question.

"A. Yes.

"Q. Tell us what conversation was had?

* * * * * *

"A. She was talking to me, and he turned around and said 'What do you think of a man of my age getting married?'

"Q. What was she saying?

"A. She was telling me about them going to get married in two or three days.

"Q. And that was before he had his attack?

"A. Yes.

* * * * * *

"Q. All right, after Ivan had the attack and fell over, did you thereafter—what took place then?

"A. We went to call an ambulance.

"Q. Did you have a conversation with Dorothy then?

"A. Yes, I asked her what his name was, because I did not know, and she said it was Ivan Hornback.

"Q. Did you ask her anything else?

"A. Yes, and I said, 'What is your name?' and she said, 'Dorothy Dunn.'

"Q. Was that all the conversation that took place?

"A. Yes.

"Q. Did you thereafter hear any conversation that took place, with the ambulance driver?

"A. Yes, when they were picking him up, he said he believed he was gone, and she said, 'We were going to be married in two or three days.'

"Q. She said it again?

"A. Yes, sir."

Plaintiff testified in rebuttal, but did not deny or contradict the testimony of Mrs. LF.

Plaintiff claims in light of the direct evidence of the common law marriage that introduction of evidence as to reputation in the community of marital status is reversible error. In support of her position she cites cases of Dunlap v. Dunlap, 88 Okl. 200, 212 P. 608; Harrison v. Burton, Okl., 303 P.2d 962 and Sam v. Sam, 172 Okl. 342, 45 P.2d 462. None of the cited cases stand for the position advanced by plaintiff that the introduction into evidence of testimony as to reputation of marital status in the community is reversible error where direct evidence has been introduced. In the case of Richard v. Richard, 172 Okl. 397, 45 P.2d 101, we said that both cohabitation and reputation is admissible as circumstantial evidence of common law contract of marriage.

Regardless of the evidence of reputation of marital status there is ample evidence showing the absence of any intent to enter into the contract of marriage.

Plaintiff's own testimony indicates she was confused about whether her divorce had been set aside. Also, the unrefuted evidence of Mrs. LF shows that the marriage between the parties was to take place in two or three days, but at the time of deceased's death it had not yet occurred.

It is well established that a common law marriage is contractual and must be founded upon a mutual consent between the parties. Chapman v. State, 84 Okl.Cr. 41, 178 P.2d 638. We can only conclude from the evidence presented in the present case that the deceased and the plaintiff intended and planned to marry at some future date. However, the mere contemplation of marriage does not establish a common law marriage. A common law marriage is based on a present assumption of an existing relationship, not upon what the parties intended or have agreed to do at a future time. To constitute a valid marriage per verba de praesenti there must be an agreement to become husband and wife immediately from the time when the mutual consent is given. Peacock v. Peacock, 196 Ga. 441, 26 S.E.2d 608.

Plaintiff's other assignments of error are directed to certain alleged irregularities in the proceedings and abuse of discretion by the trial judge. We have carefully examined the record and find no evidence in support of plaintiff's contentions. On the contrary, we found the plaintiff was afforded a just, fair and complete hearing on the determinative issues in the case. The plaintiff was given every opportunity to be heard and present her contentions before a willing and impartial tribunal.

In a case of purely equitable cognizance, this court on appeal will review and weigh the evidence, but will not reverse the judgment unless it is clearly against the weight of the evidence. Hill v. Shreve, Okl., 448 P.2d 848. Our determination upon a review of the entire record supports the conclusion and judgment of the trial court.

Judgment affirmed.

All Justices concur.