Cathleen N. PRICE, Appellee,

v.

George H. PRICE, Appellant.

No. 51177.

Court of Appeals of Oklahoma,
Division No. 2.

May 2, 1978.

Released for Publication by Order of
Court of Appeals May 25, 1978.

Joseph M. Watt, Altus, for appellee.

Bob R. Scarbrough, Altus, for appellant.

BRIGHTMIRE, Judge.

Cathleen Price left her husband and two small children to live with another man. Not long after that she bought a "divorce kit," filled in the blanks, and had her husband sign one of the papers. The 26-year-old mother appeared before the Superior Court of Arizona on August 31, 1976 at which time she was given a divorce and the father was awarded "custody and control" of the children.

The father, a member of the U.S. Air Force stationed at the Altus Air Force Base in Oklahoma, accepted the responsibility and provided a home for the youngsters. In October 1976 the mother called from Arizona and said she was coming to Oklahoma. The father opposed the idea but she came anyway. And she moved into his house. A few months later the father made her leave and she filed this action alleging a common-law marriage existed and asked for a divorce, for his house, and

for custody of the children. She prevailed and the father appeals attacking the finding of a common-law marriage, the child custody change, and the giving of his new house to the wayfaring mother.

## I

█ The first appropriate question is whether the court's finding of a common-law marriage can be sustained under the evidence? The mother correctly points out in her brief that one of the essentials for the founding of a common-law marriage is a mutual agreement between the parties to marry, to become husband and wife. *In re Estate of Hornback*, Okl., 475 P.2d 184 (1970); *Gilmore v. Harvel,* 208 Okl. 664, 258 P.2d 632 (1953). Her further assertion, however—that mere cohabitation of an adult single male and female "gives rise to the *inference* or presumption under the law of an agreement to marry"—is not true. Neither of the cases cited for the legal notion—*Coachman v. Sims,* 36 Okl. 536, 129 P. 845 (1913) and *Andrews v. Hooper,* 138 Okl. 103, 280 P. 424 (1929)—involve an issue of whether a common-law marriage existed, but both involved an attack by third parties on the validity of a formal marriage contract.

█ Under these circumstances the more refined question becomes, then, is there evidence in the record sufficient to support a finding that the parties here agreed to be married? We hold there is not.

The father admitted cohabiting with the mother after she came to Oklahoma, but before she ever moved in, he said, "I told her I had no intentions of being married to her . . . ." In later conversations he quotes the mother as vowing that "she had no intentions of marrying" the father. According to the father his intentions have never changed.

Of critical importance is the fact that the mother's testimony did not contradict this evidence in any material respect. On the contrary she confirmed it. She said she moved into the father's house after paying money to live there. She stayed until May 10, 1977 when the father called the police

and made her leave. She admits the father told her he would not marry her when she came to Oklahoma and that he maintained that position right on through until the day she left his home.

The only evidence the mother adduced in support of her contention that a common-law marriage existed was to the effect that after several months of a housekeeping relationship she felt that she "had entered into again a marital relationship." This is hardly enough. Neither the feeling, the assumptions, nor even the secret intentions of the mother are sufficient to create a marital contract. There had to be mutuality of intent. She conceded there was none by acknowledging the father never once retreated from his anti nuptial stance. Thus the direct evidence makes futile the mother's effort to prove circumstantially the existence of a marriage contract.

## II

█ Having reached the conclusion no marriage existed there remains the question of whether the trial court had authority under the pleadings and evidence to (a) change custody of the minor child, or (b) award the father's house to the mother.

A negative answer must be given both parts of the question. Plaintiff did not plead any substantial change of conditions, nor did she plead the existence of any unusual circumstances jeopardizing the child's welfare as a premise for custodial change. On the other hand while the evidence tended to show a change of her own condition— that she had left the man she ran off to live with in Arizona and needed a place to live— still such change falls far short of demonstrating that the children would be better off in her custody than in the person she elected to leave them with several months before.

And the house? The father contracted to purchase it before the mother came to Oklahoma, but the sale was not consummated until after her arrival. Although the father borrowed $400 from the mother to help with the down payment he took title in his

own name as "a single man." Evidently the trial judge considered that infusion of the $400 into the realty somehow converted it into a jointly acquired marital asset. This, of course, could not be. The property was neither jointly acquired by the parties nor the product of a marriage. The father bought the property and took title to it in his individual name. The fact that he borrowed some money from the mother does not alter the situation. Neither does the fact that he has not yet repaid her. He says he gave the mother more than $400 later on to use in setting up a beauty shop. Whether he did or what the parties may owe one another are not matters germane to the issues raised by the pleadings.

We hold the judicial authority of the trial court in this case depended upon the mother's establishment of an existing marriage between the parties. And since she failed to prove one the decree appealed from is vacated and the case is remanded with directions to take steps necessary to restore to the father whatever rights, privileges and property he has lost by reason of the erroneous decree.

Reversed and remanded.

NEPTUNE, P. J., and BACON, J., concur.