## OKLAHOMA PRODUCING & REFINING CORP. v. PENNOK OIL CO.

No. 16539—Opinion Filed April 27, 1926.

Rehearing Denied July 6, 1926.

1. Contracts—Determination Whether Executory or Executed.

The question whether a contract is executory or executed depends primarily on the intention of the parties, to be gathered from the terms of the contract and such surrounding circumstances as may be legitimately considered by the court as evidencing the intention.

2. Sales—Passage of Title—Payment in Future.

The mere fact that the price is to be paid in the future can afford no inference that a contract of sale was not intended as a present sale.

3. Appeal and Error—Review—Questions of Fact—Conclusiveness of Findings.

Where a jury is waived, and the cause submitted to the trial court, the same rule

that is applied to a verdict of a jury in reviewing such verdict on appeal is applied to the judgment of the court acting in lieu of a jury; and such findings, when reasonably supported by the evidence in the case, are conclusive upon the Supreme Court on all doubtful and uncertain questions of fact.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; A. C. Brewster, Assigned Judge.

Action by Oklahoma Producing & Refining Corporation against Pennok Oil Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Alvin Richards, for plaintiff in error.

Geo. S. Ramsey, Edgar A. deMeules, and Villard Martin, for defendant in error.

Opinion by PINKHAM, C. This action was instituted in the district court of Tulsa county by the plaintiff in error, Oklahoma Producing & Refining Corporation, as plaintiff, against the defendant, Pennok Oil Company, a corporation, as defendant. The parties will be referred to as they appeared in the trial court.

Plaintiff's petition recites that on November 25, 1921, plaintiff and defendant entered into a contract whereby the plaintiff sold to the defendant all of its right, title, and interest in and to properties, both real and personal, owned jointly by the plaintiff and defendant, located in the state of Texas, wherein it was agreed by and between plaintiff and defendant that "the present working arrangement between the seller and buyer shall continue in effect until the close of business November 30, 1921"; said working arrangement being the equal division of proceeds from the property, and the equal division of expenses in the developing, operating, and maintaining of the same; that by virtue of the terms of said agreement to purchase, plaintiff agreed to deliver to the defendant proper instruments of conveyance, assignment and transfer, as promptly as possible, and the defendant agreed to pay the plaintiff therefor the sum of $1,000 upon the execution of the contract, and the further sum of $349,000 to be delivered upon receipt of proper conveyance; that plaintiff caused to be executed and delivered to the defendant proper instruments of conveyance, assignment and transfer, and that the defendant paid to the plaintiff the sum of money set out in said contract; that plaintiff was entitled to recover from the defendant the proportionate share of said oil produced from said Texas properties up to the

close of business on November 30, 1921, and that the defendant refused to pay the plaintiff therefor, and that a balance of $6,903.02 is due the plaintiff from the defendant. The contract under which the sale by the plaintiff to the defendant of the Texas oil properties was consummated is attached to plaintiff's petition.

The defendant answered by way of general denial, and afterward filed an amended answer consisting of a general denial, and for a further defense set up an accord and satisfaction.

The cause was tried before the court, a jury being waived, and at the close of plaintiff's testimony the defendant interposed a demurrer, which was by the court overruled, to which exception was saved. At the close of defendant's testimony the plaintiff interposed its demurrer thereto, which was overruled by the court and exception saved. Thereupon the plaintiff moved the court to render judgment in its favor, which motion was by the court overruled and exception reserved. The defendant, Pennok Oil Company, then moved the court to render judgment in its favor, and after argument the court took the case under advisement, and on March 28, 1925, the court rendered judgment generally in favor of the defendant. Plaintiff's motion for a new trial was overruled, exceptions saved, and judgment entered for defendant. From the judgment of the court plaintiff has duly appealed to this court, and for reversal of the judgment presents the following general propositions.

"First, the agreement of purchase executed November 25, 1921, was an executory contract and by its terms was not to become effective until the close of business November 30, 1921, and therefore no title passed thereunder; second, as no title passed by reason of the agreement of purchase, and in view of the working arrangement whereby the plaintiff and defendant, being equal owners of the oil and gas properties, shared equally in the expenses and production from the leases, the plaintiff, having paid its half of the expense to the close of business November 30, 1921, is entitled to receive its half of all the production therefrom during the same period."

For a clear understanding of this controversy the following facts disclosed by the record may be considered: For some years prior to November 25, 1921, the plaintiff, Oklahoma Producing & Refining Company, and the defendant, Pennok Oil Company, were the owners in equal shares of an undivided one-half interest each of said Texas properties, which were producing oil and gas. The Pennok Oil Company was in pos-

session of the leases and controlled the management and operation of them under a working arrangement whereby the defendant was to operate the properties and the plaintiff and defendant shared equally in the expense and production of oil and gas saved from the premises. Under this working arrangement the Pennok Oil Company, at the end of each month, sent a bill to the plaintiff, Oklahoma Producing & Refining Corporation, for one-half of the cost of operation of the properties during that month. The oil produced from the leases was run to a pipe line company under division orders, by the terms of which the pipe line company paid one-half of the purchase price of the oil direct to the Pennok Oil Company, and the other half to the Oklahoma Producing & Refining Corporation. During the existence of this working arrangement the plaintiff was never paid for oil not actually run into the pipe line. On November 25, 1921, the date of the contract of sale, there was in storage tanks on the leases in question approximately 6,000 barrels of oil, and the evidence shows that there was approximately the same amount in the tanks on November 30, 1921. The petition alleged, as before stated, that plaintiff sold to the defendant all of its right, title, and interest in and to the properties, both real and personal, "except that the present working arrangement between the seller and buyer shall continue in effect until the close of business on November 30, 1921."

The record discloses that the plaintiff corporation admitted during the course of the trial that "the only item we are contending for is oil that was in the stock tanks that was not run to a pipeline and sold during that six-day period"; that is to say, from November 25 to November 30.

The record further discloses that the plaintiff corporation received half of the sale price of the oil produced from November 25, 1921, to November 30, 1921.

The argument on the part of the plaintiff, as we understand it, is that as the agreement of purchase executed on November 25, 1921, provided that the working arrangement, which had always existed between the parties, should continue in effect until the close of business November 30, 1921, it is entitled to its share of the oil in the storage tanks on that date, and it is earnestly urged that the undisputed facts show that the agreement of purchase executed November 25, 1921, was an executory contract and by its terms was not to become effective until the close of business

November 30, 1921, and therefore no title passed thereunder.

Numerous authorities are cited in the brief of plaintiff which, it is claimed, support the proposition.

As we view this case, after an examination of the entire record, we conclude that the sole question is whether or not the defendant, Pennok Oil Company complied with the terms of the contract of sale by continuing into effect the "working arrangement" mentioned in the contract. The allegations of the petition, and of the facts and circumstances disclosed by the record surrounding the transaction, show that the intention of the parties was that the sale was an executed one. All that remained for the defendant to do under the contract, as alleged in the petition, was to pay the plaintiff for one-half of the oil produced from November 25, 1921, to November 30, 1921, and for the plaintiff to pay to the defendant one-half of the expense of producing the same. It is admitted that the plaintiff received pay for the oil that was sold off of the leases between November 25 and November 30, 1921. The 6,000 barrels of oil in the storage tanks on November 25, 1921, one-half of the value of which was sold by the plaintiff to the defendant on that date in part consideration of the payment by defendant to plaintiff of $350,000, was approximately the same amount of oil that was in the tanks on the 30th day of November, 1921. The record shows that on December 1, 1921, proper transfers of the properties which were sold to the Pennok Oil Company, on November 25th were made, and on that date the Pennok Oil Company paid to the Oklahoma Producing & Refining Corporation $349,000.

The authorities cited by counsel for plaintiff in their brief as to the distinction between an executed and an executory contract are not questioned, and are not, we think, in conflict with the rule announced by this court:

"In contracts of this nature, when the dispute is between the parties to it, and no rights of other persons are involved, the question of the intention of the parties, as to whether title to the property passed at the time of making of the contract, is often a controlling one, and is ordinarily a question for the jury." Kirkham v. B. F. Fullerton & Son, 32 Okla. 461, 122 Pac. 652.

In Manglesdorf Bros. Co. v. Kolp, 64 Okla. 33, 35, 165 Pac. 1141, the court quotes with approval from the case of Idaho Implement Co. v. Lambach, 16 Idaho. 497, 101 Pac. 951, where the court said:

"In determining the question as to whether the title has or has not passed by the contract, the primary and first consideration is the intention and understanding of the parties as gathered from the contract and the circumstances surrounding the sale. If, under all the evidence, different minds might honestly reach different conclusions as to whether the sale was completed or merely an executory agreement to sell, then the question is one of fact, and should be left to the jury."

In 23 R. C. L. 1347, sec. 171, it is said:

"The question whether the contract is executory or executed, depends primarily on the intention of the parties, to be gathered from the terms of the contract and surrounding circumstances as may be legitimately considered by the court, as evidencing the intention."

The mere fact that the price is to be paid in the future can afford no inference that a present conveyance was not intended. Bortz v. Bortz, 48 Pac. St. 382, 86 Am. Dec. 603; 35 Cyc. 322.

The recent case of Sibley v. Pickens (Court of Civil Appeals of Texas, May 20, 1925) 273 S. W. 897, presents a case similar in many respects to the facts in the instant case. In that case Pickens, the owner of a half interest in a producing lease, on June 4th executed a contract relative to the sale to Sibley of his interest in the lease, and on the same day placed an assignment of the interest in the bank to be held in escrow. The contract provided that Pickens—

"has this day sold to second party, and second party has this day purchased from first party, a one-half interest in the oil and gas lease * * * for a consideration of $22,-717.82, payable as follows: $5,000 in cash, to be deposited in the Continental National Bank of Ft. Worth. Tex., as a guaranty that second party will carry out the conditions of the contract. Second party assumes all the indebtedness against the lease, and further agrees to pay into the bank the sum of $17,717.82 within five days from the date of the contract, which is June 4, 1923, provided first party delivers to second party an assignment of an oil and gas lease covering the property, conveying clear title to second party, in so far as it concerns first party."

The bank was authorized by the contract to deliver to Sibley the assignment upon compliance with the stipulation in the contract. It appears that the transaction was afterwards closed on June 8th. From June 4th to June 8th the oil produced from the lease accruing to the half interest in the lease was run to a pipe line, the value thereof by it paid to Sibley. Pickens sued Sibley for the value of the oil run during the period from June 4th to June 8th. The lower court rendered judgment for Pickens. Upon appeal the judgment was reversed and the court said in the opinion:

"Whether appellant or appellee is entitled to the proceeds of the oil run from the lease during the time in controversy must be determined from the contract and assignment, and these instruments are to be interpreted by the intention of the parties. The contract expressly provides that appellee, on the 4th day of June, 1923, sold to appellant, and appellant, on that day, purchased from appellee, a one-half interest in the lease, providing for the consideration to be paid therefor, and in compliance with said contract appellee on the same day executed a conveyance, containing general warranty, to the interest in the property assigned. Manifestly, the consideration expressed in the contract was the value of the interest conveyed on the date of the contract and assignment, and not the value of the lease at a later date, and, in our opinion, the record evidences that the intention of the parties was a present sale."

The facts and circumstances existing at the time of the execution of the contract of November 25, 1921, and the purpose of the clause with reference to the "working arrangement," were clearly detailed by the witnesses upon the trial of the cause. The contract was entered into on the 25th day of November. It is apparent that some confusion would be brought about in the settlement of the account between the plaintiff and defendant if the existing working arrangement was discontinued before the expiration of the month, both in the computation of the proper proportion of the operating charges to be borne by each and in the proper division of the proceeds of the oil already run to the pipe line.

It is reasonable to infer that the working arrangement should continue in effect until the close of business November 30, 1921. Upon the evidence disclosing this situation the general finding of the court in favor of the defendant involved a finding of fact that the contract of November 25, 1921, was a contract of bargain and sale effective as of that date, and that the title to the oil in storage passed to the defendant on that date. Many decisions of this court have announced the rule that where a jury is waived and the cause is submitted to a trial court, the same rule that is applied to a verdict of a jury in reviewing such verdict on appeal, is applied to the judgment of the court sitting in lieu of a jury, and such finding when reasonably supported by the evidence in the

case is conclusive upon the Supreme Court on all doubtful and uncertain questions of fact. Smith v. Maud Oil & Gas Co., 100 Okla. 235, 229 Pac. 190.

We conclude that there is ample evidence disclosed by the record to sustain the judgment of the trial court and the same should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. pp. 276, 277, 278; anno. 26 L. R. A. (N. S.) 7; 23 R. C. L. p. 1347. (2) 35 Cyc. p. 322. (3) 4 C. J. pp. 876, 879, § 2853; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.