STANDISH PIPE LINE CO. et al. v. OKLAHOMA COUNTY EXCISE BOARD.

No. 31318. June 15, 1943.

Rehearing Denied Sept. 28, 1943.

*141 P. 2d 281.*

Mastin Geschwind, of Oklahoma City, for plaintiffs in error.

George Miskovsky, County Atty., and Norman J. Futor, Asst. County Atty., both of Oklahoma City, for defendant in error.

GIBSON, V. C. J. This is an appeal from a judgment of the Court of Tax Review denying taxpayers' protest of an alleged excessive levy for the general fund of Oklahoma county for the fiscal year 1942-1943.

The protest questions the legality of a certain charge made against the cash

on hand in said fund at the close of the fiscal year 1941-1942 for an alleged obligation contracted during that year, but remaining unpaid.

In the instant case the board of county commissioners under date of August 5, 1941, entered into a contract with a certain firm whereby the latter agreed to furnish the county a quantity of road material in the nature of rock asphalt at $5.25 per ton, to be delivered within ten days after written notice of order from the county engineer. The contractor further agreed to furnish the material to the county at the designated price "up until June 30, 1942."

The contract was entered into pursuant to the successful bid of the seller and the call therefor by the board. The proceedings leading up to the bid, such as the resolution of the board and the notice to bidders, recited that the material was to be delivered during the fiscal year ending June 30, 1942.

By letter of October 15, 1941, the county engineer notified the seller to enter the county's order for 3,000 tons of rock asphalt as per contract of August 5, 1941, above; shipment to be made as and when directed. On the same date a purchase order therefor, No. 1473, was entered against the general fund appropriation as required by statute. 62 O. S. 1941 §§ 311, 312. The good faith of the transaction is not questioned.

On July 23, 1942, after the expiration of the fiscal year, the county engineer notified the seller by letter to ship the 3,000 tons of asphalt mentioned in the letter and purchase order of October 15, 1941, to a certain point in Oklahoma City.

Protestants say that the contract of August 5, 1941, never materialized into a legal obligation during the fiscal year 1941-1942, thereby leaving the purchase order as an illegal charge against the general fund appropriation for that fiscal year, and therefore could not be deducted from the cash surplus therein when estimating the needs of said fund for the fiscal year 1942-1943.

It is not disputed that if the charge was illegal and therefore improperly deducted from the cash surplus, the resulting increase of such surplus over that taken into consideration would serve to decrease the levy by .13 mills.

The term "legal obligations" as used in 68 O. S. 1941 § 298 can mean only those obligations arising from transactions fully completed during the current fiscal year and for which warrants are legally issuable before the close of that year. If warrants are so issuable during the particular fiscal year, they may be issued thereafter against the funds remaining in the particular fund at the close of the year and reserved for that purpose.

Since the purchase of the material was within the power of the county commissioners, and there were ample funds standing appropriated for that purpose, it is clear that the bid and the acceptance thereof resulted in a legal contract to sell. This is not disputed.

The question is whether that contract together with the written order of October 15, 1941, to make shipment when directed, with the purchase order entered as required by law on that date culminated in an immediate sale. If there was such a sale, it constituted a legal obligation within the current fiscal year and therefore an encumbrance on the funds remaining in the general fund at the close thereof.

A municipality is bound by its contracts duly entered into within the scope of its statutory powers.

Here, the legality of the contractual negotiations so far as they had progressed during the current fiscal year are not questioned. The objection is that they did not culminate in an actual sale within that year for failure of delivery necessary to a sale. If there was no sale, say protestants, until the actual delivery of July 23, 1942, or thereabouts, then the material actually was not purchased until the fiscal year 1942-1943, and to pay therefor out of the cash surplus remaining at the close of the fiscal year 1941-1942 would be to

use an appropriation for a fiscal year other than the one for which it was made, and therefore illegal by reason of the provisions of section 298, supra, to the effect that appropriations made for a current fiscal year "shall not be used for any other fiscal year."

In support of their contention that no sale took place, protestants cite 62 O. S. 1941 § 483, which makes it unlawful to issue a warrant in payment of services or materials before the services or materials are actually furnished to the municipality. Counsel say that under that section actual delivery was necessary to the completion of the sale within the fiscal year in question, and, if no actual delivery, no legal obligation existed sufficient to constitute an encumbrance on the cash surplus aforesaid. Said section makes it unlawful to issue a warrant in payment "unless the services or things for which payment is claimed have actually been furnished to the municipality."

But counsel apparently overlooked the proviso in said section 483 which specifically excludes from the operation thereof all counties and municipalities having a population in excess of 140,-000. Oklahoma county falls within that classification. Whether, under that section, actual delivery is necessary to create a legal obligation against counties of lesser population, we do not say. It is clear that the section does not apply to Oklahoma county.

Protestants say further that there was no transfer of the materials in the fiscal year 1941-1942 sufficient to constitute a delivery under the general law of sales.

We agree that if the sale was not completed in the fiscal year 1941-1942, the payment therefor out of the funds remaining at the close of that year would result in the use of the appropriation for the succeeding year and therefore illegal by reason of the provisions of section 298, supra, prohibiting the use of such surplus for any purpose other than to retire existing legal obligations or to apply the same as a credit to the same appropriation for the succeeding fiscal year, the effect of which latter operation is to reduce levies accordingly.

Whether the contract for sale became an executed one in the fiscal year 1941-1942 and therefore a legal obligation of the county depends upon whether title passed during that year. The question is governed by the general law of sales; and transfer of actual possession is not necessary to the completion of a sale unless so agreed by the parties. That rule applies in this case, for there is no statute requiring actual transfer of possession in sales to counties the size of Oklahoma county. What shall constitute transfer of title ordinarily depends upon the intention of the parties. 55 C. J. 529, § 531; Kirkham v. B. F. Fullerton & Son, 32 Okla. 461, 122 P. 652; Oklahoma Producing & Refining Corp. v. Pennock Oil Co., 118 Okla. 170, 247 P. 667.

In the instant case the negotiations as a whole, all the written documents constituting the contract, showed specifically that delivery was to be made during the fiscal year 1941-1942. During that year the county placed its order for the material to be delivered pursuant to the contract. The order was unconditional, except actual shipment was to be made "as and when directed."

The record indicates strongly that the seller at all times subsequent to said order, which was dated October 15, 1941, held the material in readiness to make actual delivery. It may have been held as an unseparated portion of a mass quantity of similar materials, in which case selection or separation is said in some instances to be necessary to complete a sale. 55 C. J. 541, § 543. But where, as in this case, the material is a constituent portion of a mass, uniform in kind, and indistinguishable from the remainder, there is nothing to prevent the passing of title to the portion sold, although it is not actually selected by the buyer or separated from the mass, if the parties so intended. 55 C. J. 542, 543, §§ 544, 546.

There is ample evidence to show that the parties considered the sale as completed by the engineer's order of October 15, 1941. An actual selection or setting apart of the material was unnecessary to passing of title or completion of the sale. To a certain extent the rule stated in Kirkham v. B. F. Fullerton & Son, supra, well applies here. It reads as follows:

"Where it is apparent that it is the intention of the vendor to transfer the title, and of the vendee to accept it, a sale of personal property may be complete, although the thing sold remains to be delivered and weighed to ascertain the exact amount of the price to be paid."

There is some indication that the material remained a part of a general mass, and that a separation was necessary before weighing and actual delivery could take place. We therefore enlarge the rule stated above to cover that situation, and hold that where it is apparent that it is the intention of the vendor to transfer the title, and of the vendee to accept it, a sale of personal property may be complete, although the thing sold remains to be separated from a general mass, and weighed, in order to ascertain the exact quantity purchased preparatory to actual delivery.

If there is a real and bona fide need for the material at the time of the purchase, the fact that it remains unusued until a subsequent fiscal year is of little importance. In such event, when the material is paid for out of the funds appropriated for that purpose for the year in which the sale was completed, mere delay in applying it to the purpose for which it was required would not amount to the use of an appropriation for a fiscal year other than the one for which the appropriation was, made. Materials purchased with municipal appropriations are often carried over for use in subsequent years.

We may say here that the purchase order entered October 15, 1941, played no part in the completion of the contract of sale. The purpose of such an order as disclosed by sections 311 and 312, supra, is to prevent expenditures in excess of the income and revenue provided for the current fiscal year. Board of County Com'rs v. Oklahoma Creosoted Lumber & Piling Co., 181 Okla. 561, 75 P. 2d 1093.

We find no error in the decision of the Court of Tax Review.

The judgment is therefore affirmed.

CORN, C. J., and RILEY, OSBORN, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. BAYLESS, J., absent.