282 F.2d 24
 COMMERCIAL STANDARD INSURANCE COMPANY, a corporation, Appellant,
v.
UNIVERSAL UNDERWRITERS, a corporation; Jack Jones, d/b/a
Jack Jones Chevrolet Agency; Patsy Ann Sellars, a
minor; and Ned C. Sellars, Appellees.
 No. 6306.
 United States Court of Appeals Tenth Circuit.
 Aug. 18, 1960.
 
 Duke Duvall, Oklahoma City, Okl. (Jack Ewing Wilson, Oklahoma City, Okl., was with him on the brief), for appellant.
 Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., was with him on the brief), for appellees.
 Before BRATTON, PICKEET, and LEWIS, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 In its primary aspects, this action for a declaratory judgment presents a controversy between two insurance carriers respecting coverage of a new Chevrolet automobile which was involved in a traffic accident in Oklahoma with resulting personal injury and property damage. Commercial Standard Insurance Company, hereinafter referred to as Commercial, issued to Mrs. H. W. Byrns, Jr., its combination automobile insurance policy. By its terms, the policy provided coverage for a 1953 Chevrolet automobile; provided that in the event the insured automobile was replaced by a newly acquired automobile, the newly acquired automobile should be covered if days after the delivery date of such automobile; days after thedelivery date of such automobile; and provided that the word 'insured' as used in the policy should include the spouse of the named insured if the two were residents of the same household, and also any person while using the automobile with the permission of the named insured or his or her spouse. But the policy expressly excluded from coverage any person operating an automobile sales agency, with respect to any accident arising out of the operation thereof. Universal Underwriters, hereinafter referred to as Universal, issued to Jack Jones, doing business as Jack Jones Chevrolet Agency, its policy of garage liability insurance. It provided coverage for the use of any automobile in connection with his automobile sales agency. By issues appropriately joined, each company sought judgment determining that its policy did not provide coverage for damages arising out of the accident and that the policy of the other did. After making findings of fact and conclusions of law, the court entered judgment determining that Commercial's policy provided coverage for the accident and that the policy of Universal did not. The case came here on appeal from such judgment.
 
 
 2
 Before presenting its contentions urged for reversal of the judgment, Commercial takes occasion to remind us that since the case was submitted in the court below on depositions and documents, with no witness testifying in person before the court, this court is equally capable with the trial court of examining the evidence and drawing conclusions therefrom and is under the duty to do so. This court has held in broad general language that in the absence of oral testimony it is equally capable with the trial court of examining the evidence and drawing conclusions therefrom and is under the duty of doing so. United States v. Corporation of President of Church of Jesus Christ of Latter-Day Saints, 10 Cir., 101 F.2d 156; British America Assurance Co., etc., v. Bowen, 10 Cir., 134 F.2d 256; Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774; Blackner v. McDermott, 10 Cir., 176 F.2d 498; Lamb v. Interstate Commerce Commission, 10 Cir., 259 F.2d 358; Cherot v. United States Fidelity and Guaranty Co., 10 Cir., 264 F 2d 767, 71 A.L.R.2d 959. But the court has further said that even though a case was submitted to the trial court without oral evidence given upon the trial, the duty of this court to evaluate the facts does not extend to the right or duty to make an independent evaluation thereof without regard to the findings below. Lamb v. Interstate Commerce Commission, supra. And in addition, the court has said that in such a case, it is loath to overturn the findings of an experienced trial judge unless in the opinion of the court they are clearly erroneous. Cherot v. United States Fidelity and Guaranty Co., supra. The rule and the cases discussing it are mentioned in order to make it appropriate to say that we have endeavored to discharge our duty. We have examined with care the entire record and we find ourselves in complete accord with the crucial findings of fact made by the trial court.
 
 
 3
 The judgment is challenged on the ground that at the time of the accident, title and ownership of the new Chevrolet involved in the accident had not been transferred from Jones to Mrs. Byrns; and that, therefore, it was not a newly acquired automobile within the coverage of the policy issued by Commercial. One general rule of law in Oklahoma is that in the absence of circumstances indicating a contrary intention of the parties, the sale of personal property is not complete while anything remains to be done to determine its quantity, its quality, or to separate the class, and the performance thereof is a condition precedent to the vesting of title in the purchaser. Ogle v. Oklahoma City Horse & Mule Commission, 173 Okl. 34, 47 Pac.2d 130. Another general rule is that as between the parties to the transaction, delivery of actual possession is not essential to effect a transfer of title unless so agreed by the parties. Pharaoh v. Burnett & Moore, 112 Okl. 188, 240 P. 743; Standish Pipe Line Co. v. Oklahoma County Excise Board, 193 Okl. 130, 141 P.2d 281; Holbird v. Harris, 197 Okl. 646, 174 P.2d 262; Anderson v. Courtney, 203 Okl. 71, 218 P.2d 361. And a third general rule is that what shall constitute transfer of title ordinarily depends upon the intention of the parties to be gathered from the facts and circumstances peculiar to teh transaction. Standish Pipe Line Co. v. Oklahoma County Excise Board, supra.
 
 
 4
 With these general rules in mind as helpful guides, we turn to the evidence. Evidence was adduced at the trial which tended to establish these facts and circumstances. Jones was the owner and proprietor of the Chevrolet agency in Grandfield, Oklahoma. H.W. Byrns, Jr., and his family resided in the town. Mrs. Byrns owned the 1953 model Chevrolet described in the policy issued by Commercial. She saw a new automobile on display at the sales agency of which Jones was owner and proprietor and indicated to her husband a desire to purchase it with the old car being traded in on the purchase price. On the morning of the day of the accident, Byrns and Jones chanced to meet at a coffee shop; went together to the automobile agency; and entered into an agreement for the purchase of the new automobile, with the old automobile being traded in. Byrns gave Jones a check for the price of the new automobile less the trade-in figure of the old car; and Jones gave Byrns a certificate of title for the new car. It was agreed that the automobile was to be equipped with certain additional accessories, including a rear antenna, two mirrors, and perhaps a radio. Jones advised Byrns that the car could be picked up at about four-thirty o'clock that afternoon. Byrns desired to trade the rayon tires then on the automobile for nylon tires. Mechanics at the agency jacked up the car and removed the wheels. Byrns took the wheels to a local service station; caused the exchange of tires to be made; and returned the wheels with the nylon tires thereon to the Chevrolet agency. Byrns also purchased license tags for the new car and delivered them to Jones to be placed on the car; The license agent from whom he purchased the tags was also agent for Commercial, and Byrns told him of the purchase of the new car and the trade-in of the old, but nothing was said about changing the insurance. Byrns expected his wife to have that done. After returning the wheels and delivering the tags to Jones, Byrns left the premises sometime in the morning He returned about three o'clock in the afternoon. The license tags were affixed to the car and the wheels were on it. But work was still being done on the car and the hood was raised. Byrns remained, and at about four-thirty o'clock, Jones told him that the car was ready. It was the plan of Byrns to have his daughter drive the car home when it was ready. Jones suggested that he and Byrns take the car out for a spin and check, or he may have suggested that they go for a ride. Byrns suggested that Jones drive and he did. They stopped at a filling station and had the car filled with gas. Jones paid for the gas. After leaving the filling station, Jones selected the route and the road. Normal driving procedure was followed. The accident occurred at an intersection of highways about a mile from town. At the time of the accident, Byrns was reading in the manual about power steering. Byrns furnished Commercial a statement concerning the accident, and Commercial voluntarily replaced the car with another one identically like it. Jones ordered the car with which the car involved in the accident was replaced. From this review of the evidence, it is to be noticed that the purchase price was paid and it was agreed that Byrns could pick up the car at about four-thiry o'clock in the afternoon. Certain additional accessories were to be placed on the car, and that was done. At about four-thirty o'clock, all of the terms and conditions of the transaction had been fulfilled and Byrns was at the place of business. Up until that time, nothing had been said respecting a spin or a road test. And then it was not mentioned in the form of a condition precedent to the completion of the transaction. When all of the facts and circumstances are considered together and each is givenits appropriate weight, we share with the trial court the view that the sale had been completed prior to the accident, and that the car was a newly acquired automobile within the coverage of the Commercial policy.
 
 
 5
 The judgment is challenged on the further ground that even though it be held that the sale of the automobile to Mrs. Byrns had been completed and the car was, therefore, a newly acquired automobile within the meaning of the Commercial policy, the automobile was specifically excluded from coverage under the policy because at the time of the accident it was being driven by Jones, the owner of an automobile sales agency, on a mission arising out of the operation of the agency. The policy contained language expressly excepting from coverage 'any person * * * operating an automobile sales agency * * * with respect to any accident arising out of the operation thereof.' The court found in substance that Jones and Byrns rode together in the new car for pleasure and not for any purpose connected with or arising out of the operation of the sales agency. And the court concluded that Jones was not driving the car at the time of the accident for any purpose of the agency. Repetition of the evidence is unnecessary. It is enough to say that we share with the trial court the view that at the time of the accident, Jones and Byrns were riding in the car for mutual pleasure as distinguished from any purpose connected with or arising out of the operation of the Chevrolet agency. Stated otherwise, we think that mutual pleasure in riding together in the new car was the dominant purpose of the drive rather than a mission arising out of the operation of the sales agency.
 
 
 6
 The judgment is affirmed.