REPUBLIC SUPPLY COMPANY, Plaintiff in Error,

v.

H. E. LEDBETTER, L. W. Biddick, Jerome M. Westheimer and D. C. Fitzgerald, Jr., Defendants in Error.

No. 41122.

Supreme Court of Oklahoma.

Sept. 19, 1967.

Fischl, Culp & McMillin, Ardmore, Tom E. Smith, James F. Metzer, Oklahoma City, for plaintiff in error.

Goins & Smith, by J. I. Goins, Ardmore, for defendants in error.

BLACKBIRD, Justice.

Involved in this appeal is an action for damages for breach of an oral contract, evidenced by a written invoice, concerning the purchase by defendants in error, hereinafter referred to as "plaintiffs", from plaintiff in error, hereinafter referred to as "defendant", of certain metal pipe, consisting of both casing and tubing, for use in oil and gas wells.

On November 30, 1955, when one of the plaintiffs, H. E. Ledbetter, purchased the pipe for all of them, they were associated together in drilling and exploring for oil and gas; and such pipe was in short supply. It was because of this latter fact, rather than any immediate need for it in their operations, that plaintiffs bought the pipe at that time. That was also the reason that the pipe remained undelivered, and in the pipe yard of L. H. Ralston Trucking Company, where it had been stored with greater quantities of other pipe of different kinds belonging to defendant and others, when Ledbetter, on December 30, 1955, issued to defendant his check in payment of the pipe's full purchase price (less the 30-day cash discount noted on the invoice) of $18,303.13. As shown on the invoice, this total amount was paid for 7600 feet of 5½" casing, 500 feet of 10¾" casing, and 600 feet of 2⅜" electric weld tubing. Besides a more complete description of the three items of pipe purchased, and their itemized price, the invoice also bore the following notation:

"Bill This footage when pipe is picked up and tallied will correct above footage by credit or addition to charge. This is at customers request."

Following the death of a Mr. Fore, who had owned the 5-acre tract on which the L. H. Ralston Trucking Company's pipe yard was located, said Trucking Company, which had allowed several owners of pipe, like the defendant, to store it there without charge, as a way of obtaining trucking business, decided, in 1958, that it would no longer rent the premises for that purpose. Accordingly, said Trucking Company notified all owners of pipe in the yard that they would either have to move it, or make arrangements to continue storing it there with Fore's widow, Mrs. Modell Fore, who was going to operate the yard after December 31, 1958. As plaintiffs had neither called for, nor had had delivered to them, nor to anyone upon their order, all of the casing, or any of the tubing, which, at the time of its purchase from defendant, was stored in said pipe yard, they started paying rent to Mrs. Fore for the pipe's storage on January 1st, 1959.

After said plaintiffs had moved certain portions of the casing out of the yard, at various times to use in individual, or collective, transactions and oil and gas operations, and had allowed a Mr. Godfrey, who wanted to borrow part of it, to truck some of it out of the yard, plaintiffs discovered on or about June 1, 1962, that the electric weld tubing, included in their previous, above-described purchase from defendant was not in the yard. This discovery impelled them, on June 2, 1962, to make a demand upon defendant for "delivery" of the tubing. After defendant refused this demand, plaintiffs instituted this action for judgment against defendant in the principal sum of $4,791.80, which their petition, filed March 15, 1963, represented as the "purchase price" of the tubing.

In its amended answer, defendant alleged, among other things, that when the "pipe" (which word seems to be used interchangea-

bly with, and as a synonym for, "Casing") and tubing was sold to plaintiffs " * * * it had never been tallied or measured for footage"; that the footage shown on the invoice, for which plaintiffs paid, was merely estimated, with the understanding that the "measuring or tallying of the actual footage * * * in accordance with the standard practice and custom and useage in the industry, would be performed by the trucker who stored the pipe and tubing or the representatives of plaintiff_ and defendant at the time the plaintiff_ had the pipe hauled from the storage yard to its final location or point of use; * * *". Although one portion of the amended answer alleged that the tallying and measuring had been done on all of the invoiced "pipe and tubing *except that portion of the tubing involved herein* * * *", (Emphasis added) said pleading also alleged, in its paragraph 4, that the L. H. Ralston Trucking Company stenciled plaintiff's name on each outside joint of each layer of the pipe *and tubing*, and placed the same on separate racks in its yard for plaintiffs. Defendant further alleged that "title and control over the pipe and tubing * * * (presumably over all of it) * * * passed to plaintiff_ on November 30, 1965, and defendant had no further control or authority over * * * (it), after that date; * * *". In another portion of said pleading, defendant alleged that the pipe belonged to plaintiffs after its "delivery". Defendant's amended answer also referred to Mrs. Fore's assumption of proprietorship over the pipe yard, and to plaintiffs' continuing to let her store the pipe and tubing there, and to the fact that portions of that which had been in storage were withdrawn in various quantities and at different times; and it denied all knowledge of what had happened to it, after it had been "delivered" to plaintiffs.

As a further defense, the amended answer alleged that the action was "barred by the Statutes of Limitations in such cases made and provided."

After plaintiffs' filing of a reply in which certain allegations of defendant's amended answer in conflict with their petition were denied, the parties, at the pre-trial conference, waived a jury and proceeded to trial before the court.

As indicated by the above references to the pleadings, the principal issue at the trial was whether the title to the tubing involved passed to plaintiffs on or before December 30, 1955, when they paid defendant for it (along with, and by the same check with which they paid for, the casing)—so that they bore the risk of its subsequent loss—or whether the tubing's title did not pass to them until there was a constructive delivery of it to them, by marking it, and/or otherwise segregating it from other pipe and/or tubular goods stored in the pipe yard, originally maintained for its customer's use, by L. H. Ralston Trucking Company. There is no question from the evidence introduced at the trial that a portion of plaintiffs' purchase, i.e., the casing—which is not involved herein—was separated from the rest of the mass of pipe of various sizes and descriptions in the pipe yard, then stacked on pipe racks, and marked as belonging to at least one of the plaintiffs. Nor is there any question but that most of this casing was hauled out of the yard at various times and used by one or more of the plaintiffs and that some of it was borrowed from them by Mr. Godfrey. Whether or not the tubing involved here was also segregated from other pipe and/or tubing of various sizes and descriptions in the yard, appears to have been recognized by the trial judge as a crucial issue in the case; and his oral remarks in rendering a general judgment, at the close of the trial, for plaintiffs, as prayed for in their petition, revealed his opinion that such segregation was never established. After such judgment was entered, and defendant's motion for a new trial was overruled, they perfected the present appeal.

In its first proposition for reversal of the trial court's judgment, defendant contends that the sale of the tubing was made on (the date of the invoice) November 30, 1955, and

that therefore its title, ownership, possession, control, and all risk of its loss, passed to plaintiffs on that date. This contention is supplemented under defendant's "Proposition No. II", with the further contention that whether or not the tubing was measured or tallied, to determine the actual footage to be delivered to plaintiffs, pursuant to their purchase (so that the consideration therefor could be adjusted accordingly) could have no effect upon the passage of its title, as that was merely a mathematical adjustment to be made after the sale.

■ In support of its argument under its first proposition, defendant urges application of the general rule stated in 46 Am. Jur., "Sales", § 414, and followed in Pharoah v. Burnett & Moore et al., 112 Okl. 188, 240 P. 743, that where there is an unconditional contract of sale of specific goods, "in a deliverable state", the property in (or title to) the goods passes to the buyer when the contract is made.

■■ A question to resolve before applying this rule is: When are the goods "in a deliverable state?" This expression, as defined in the cited case is: "* * * when they are in such a state that the buyer would, under the contract, be bound to accept or take delivery of them." Where the article purchased is, at the time of its purchase, mixed with a mass of other articles of different sizes, or descriptions, they are not in a "deliverable state" under the above definition, until they are segregated from the mass. This was the "general law" (see Idaho Products Co. v. Bales, 36 Idaho 800, 214 P. 206, 209 and 77 C.J.S. Sales § 253 a(2), p. 1039) before the January 1st, 1963 effective date of our State's Commercial Code, with its specific provisions concerning risk of loss and limitation of actions. See Tit. 12A §§ 2–507 and 2–725. The evidence in this case clearly indicates that, at the time plaintiffs and defendant entered into their contract concerning the pipe (both tubing and casing) it was mixed with other pipe of various kinds, sizes, and weights in the Ralston pipe yard. There-

fore, the rule applied in Standish Pipe Line Co. v. Oklahoma County Excise Board, 193 Okl. 130, 141 P.2d 281, to material in a mass that is "uniform in kind", and on which defendant relies, does not apply here.

We have carefully examined the evidence, and cannot say that the trial judge's conclusion that the tubing was never segregated, and/or placed in a deliverable state, to await plaintiffs' directions with reference to its actual delivery, or use, or to exercise direct dominion over it, was contrary to the evidence, or without sufficient evidence to support it. In arriving at this conclusion, we have not been unmindful of the evidence indicating that plaintiffs thought, or assumed, until the search was made for the tubing in 1962, that it had been segregated from the other pipe and/or tubular goods in the Ralston yard, and that after Mrs. Fore assumed control of the yard, they paid rent on storage space there, probably for the tubing, as well as some casing. Such evidence, however, is not the equivalent, in our opinion, of proof that such a segregation had (contrary to defendant's representations) ever occurred.

As we have found no merit in defendant's arguments, under their propositions "I" and "II", that the contract involved was fully executed, and title to the tubing passed to plaintiffs in 1955, we likewise find no merit in its contention, under its proposition "III", that both the three and five-year periods of limitation had expired when plaintiffs commenced this action in 1963. The trial court's conclusion, herein upheld, that the tubing had never been segregated, from other different kinds of pipe in the Ralston yard, tends to place the parties' contract, as to that item, in the category of "executory contracts" as defined in defendant's brief, i.e., those in which "there remains some future act to be done by one of the parties."

■ As the trial court's judgment constituted a finding of fact, supported by the evidence, that the tubing had never been segregated from the mass of other pipe in the pipe yard, and that this fact was not discovered by, or known to, plaintiffs until June 1,

1962, we think there is merit in plaintiffs' contention that their cause of action for defendant's breach of the contract could not have accrued until their discovery of said breach. Defendant recognizes that the subject contract specified no date, after it was entered into, within which plaintiffs were to demand, or attempt to "pick up", or obtain delivery of, any of the pipe; but they contend that the law contemplated "a reasonable time" for them to do that. The weakness in their argument is that it does not demonstrate, by citation of any applicable authority, when this "reasonable time" began to run.

For all that the sales invoice and other evidence in this case shows, the parties' contract contemplated that defendant would hold, or store, the pipe for plaintiffs indefinitely, and presumably as long as it could remain in storage without cost to defendant. The only "beginning" date mentioned in defendant's attempt to demonstrate that the action was barred by any limitation period is: "December 30, 1955"; but its suggestion of this date is couched in the hypothesis that "The pipe and tubing was segregated * * *" on that date. As already indicated, the proof does not support such a hypothesis—at least as to the tubing. There can be little question in this case but that plaintiffs did not discover that the tubing was not in the pipe yard until June 1, 1962; and defendant makes no effective demonstration (contrary to the finding which inheres in the trial court's judgment) that they *should have* discovered its absence before that date. Under the circumstances, it is inconceivable to us that plaintiffs' action could have been barred either by laches or any applicable limitation period, in view of the fact that they made their demand upon defendant almost immediately after this discovery, and then commenced this action within one year thereof. In this connection notice Greenfield Box Co. v. Independence Veneer, etc., Mfg. Co., 163 La. 86, 111 So. 608, cited at 78 C.J.S. Sales § 505, Note 59. It is our opinion that this action was barred by neither the three nor the five-year period of limitation. This determination is consistent with our previous decision concerning the breach of a warranty that was prospective in nature, in that it concerned a future condition, or durability, that could only be tested, or ascertained, after installation, and *subsequent* to the time the sales contract was entered into. See Hepp Brothers, Inc. v. Evans, Okl., 420 P.2d 477. It is also consistent with the limitation provisions of the Commercial Code (§ 2–725, supra).

As we have found no cause for its reversal in any of the arguments presented by defendant, the judgment of the trial court is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY and McINERNEY, JJ., concur.